**Bertie Mae RHOTON,
Plaintiff-Appellant,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Defendant-Appellee.**

No. 82–5245.

United States Court of Appeals,
Sixth Circuit.

Sept. 22, 1983.

John S. McLellan, argued, Kingsport, Tenn., for plaintiff-appellant.

Cecil D. Branstetter [Lead Counsel], R. Jan Jennings, Timothy Costello, argued, Nashville, Tenn., for defendant-appellee.

Before KENNEDY and WELLFORD, Circuit Judges, and COHN, District Judge.*

WELLFORD, Circuit Judge.

Plaintiff-appellant appeals the decision of the United States District Court for the Eastern District of Tennessee denying her relief in an action for survivor's benefits against the defendant-appellee Pension Fund. Jurisdiction is founded upon the Employee Retirement and Income Security Act (ERISA), 29 USC § 1132(a)(1)(B).

At issue is whether the denial of the benefits sought was arbitrary, capricious, or in bad faith. *Van Gunten v. Central States, Southeast and Southwest Areas Pension Fund,* 672 F.2d 586 (6th Cir.1982). Because the Fund trustees have given an implausible interpretation to the Plan which we find contrary to its written language as well as its Summary,[1] we find the denial of benefits arbitrary and capricious and reverse.

## I.

The facts are largely uncontested. Plaintiff's deceased husband, Roy Rhoton, became ill in early 1978 and applied for and received a total disability pension of $150 monthly from the Fund.[2] His entitlement derived from his past twenty-three years continuous employment as a mechanic by Mason & Dixon Lines, Inc., and his membership in Truck Drivers Local No. 549 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Teamsters) during that time. Apparently upon learning that he

was terminally ill, on November 7, 1978, Rhoton also applied for an early retirement pension, which would have paid $348.58 to him for the remainder of his life. His years of service had vested him with the right to the early retirement pension.

Rhoton died on December 12, 1978, before the Fund had processed his application for early retirement, and his surviving spouse, plaintiff-appellant in this action, subsequently applied for survivor pension benefits. The application was denied both by Fund administrators and its trustees on the grounds that Rhoton had irrevocably chosen to receive disability benefits, and was thereby precluded from receiving early retirement benefits.

It is undisputed that unless Rhoton were precluded from his vested retirement benefits by reason of his earlier decision to take the lesser disability benefits, he would, and his widow also would, be entitled to receive those benefits.[3] The primary question in dispute, then, was whether or not Rhoton could legitimately effect a change in his benefits once he had elected to receive disability benefits from the Pension Plan. The district court upheld the trustees' determination that he could not. The court relied in part on the following language from the Summary of the plan and its benefits:

### SELECTION OF BENEFITS

Only ONE type of pension benefit will be payable to you from this Plan. Even if you meet the requirements for more than one type of pension benefit, only ONE will be payable from this Plan at the time of your Retirement or death. Therefore, you MUST SELECT the type of benefit

---

* Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation.

1. The pension plan was described in a summary plan description given to the employees setting out the benefits available and procedures pertinent to its operation. We refer to this herein as the "Summary."

2. Rhoton apparently decided on this course because of potential loss of seniority if he were

able to return to work from early retirement. Seniority was not lost by his receipt of disability benefits.

3. The parties apparently also agree that Mr. Rhoton was not entitled to collect both disability pension and early retirement benefits, and that no survivor benefits, other than a lump sum death payment of $1000, are payable to Mrs. Rhoton under her husband's disability pension.

you may be eligible to receive. This selection MUST be made AT THE TIME YOU RETIRE AND APPLY FOR A PENSION BENEFIT.

Summary at 26.

The district court also relied on portions of the Summary which indicate that a pensioner who becomes re-employed after retirement must work at least an additional three years before becoming eligible to change benefit types. *See* Summary at 28. The district court concluded that the interpretation given to the Plan by its trustees was neither arbitrary nor capricious since it was "properly based upon reasonable financial and actuarial considerations which underlie the solvency of the entire trust." The court therefore denied appellant all relief.

## II.

This appeal requires an examination of whether the contract language can support the interpretation given it by the trustees of the Plan and ratified by the district court. Our review of the language of the Plan and Summary persuades us that the trustees' interpretation is arbitrary and capricious. The language does not support the trustees' harsh interpretation; rather, common sense and fairness suggest clearly that the interpretation sought by appellant is the correct one.

In support of their argument that benefits were properly denied, trustees rely primarily upon sections of the Plan itself: Article IV, section 4.11 of the Plan, which provides that pensioners who are eligible for more than one type of benefit must select only one "in order to avoid payment of both benefits," and Article IV, section 4.14 of the Plan, which states that a pensioner (including a disability pensioner, *see* section 4.6) who becomes re-employed in a Teamster industry must complete at least 150 weeks of additional contributions in order to change the type of benefits he may receive.

The trustees rely on the "Selection of Benefits" provision of the Summary quoted by the district court. The clear purpose of that provision, however, is to avoid "double-dipping" by participants who are eligible for multiple benefits. The section of the Plan itself which corresponds to the above Summary description states as follows:

Section 4.11: Selection of Benefits. A selection shall in every appropriate instance be made between the Death Benefit (section 4.08) the Pre-Retirement Survivor Pension Benefit (section 4.09) and the Post-Retirement Survivor Pension Benefit (section 4.10) *in order to avoid payment of both benefits.*

(Emphasis added.)

Mr. Rhoton did not apply for *both* disability and early retirement benefits. Rather, he requested that he receive early retirement benefits *in lieu* of the disability benefits he was already receiving. No language, either in the Plan or Summary, suggests that he was not at liberty to effect such a change. In our view, this section of the Plan does not support the forfeiture which results from the trustees' interpretation.

The trustees also rely on section 4.14(c), entitled "Re-employment in the Teamster Industry," which provides as follows:

(c) If a Pensioner after Retirement has returned to Covered Employment and he retires again, the type of benefit received under Articles IV or V of this Plan shall be subject to change if at least 150 weeks of contributions (as defined in section 1.08) were made or required to be made to the Pension Fund on his behalf because of his return to Covered Employment and he satisfies all other eligibility requirements for that type of benefit.

The trustees' reliance on section 4.14 (the 150-week rule) is misplaced since Rhoton did not "return to covered employment." The section requires 150 weeks of contribution from pensioners who return to active Teamster employment after retirement; it does not by express language or by implication prohibit a participant in the Plan who is eligible for more than one type of benefit from altering his initial selection. When section 4.14(c) is read with other provisions

in the Plan and Summary, it is clear that neither the Plan nor its Summary precludes selection of alternatively available benefits for eligible participants such as Rhoton. The provisions relied upon by appellee apply only to workers who elect to retire with eligibility for one type of benefit, later become re-employed, and as a consequence qualify for a new type of benefit not previously available to them. Those workers must accumulate 150 weeks of additional credits to attain the higher retirement benefits.

The language of the Summary mandates this interpretation. The Summary section, entitled "Re-Employment after You Start Receiving Benefits," reads as follows:

In the event you retire, start to receive benefits, and then return to Covered Employment . . . your benefits under this Plan will be suspended. . . . When you retire again, the additional service you earned during your re-employment may count in determining your benefits.

. . . .

However, if your re-employment results in eligibility for a benefit type different from that upon your original retirement (such as a change from a Disability Pension Benefit to an Early Retirement Benefit or Twenty-Year Service Pension Benefit) then you must have received at least 3 additional years of Credited Service based on contributions required to be made to the Plan on your behalf before you are eligible to change benefit types.

Summary at 27–28. This language clearly contemplates the circumstances under which a retiree may *increase* his benefits under the Plan by resuming employment and making additional contributions. It does not apply in the instant case to Rhoton.

Other language makes clear the incongruity of attempting to apply section 4.14(c) to appellant. Under 4.14(b), participants who are re-employed do not lose vested benefit levels which they have already attained and for which they have made contributions. Indeed, if a disability pensioner recovers from his disability and returns to work, the Plan provides as follows:

[T]he number of years of Credited Service you had before becoming disabled *will be restored to you.* . . . If you become re-employed by an Employer required to make contributions at an increased Contribution Class, then you may receive these increased benefits depending on how long you received a Disability Pension Benefit and the extent of your re-employment with the Employer.

Summary at 21 (emphasis added).

The trustees' attempt to apply section 4.14(c) to Rhoton to require 150 weeks of additional service for him to regain an already vested benefit because that pensioner initially chose to take disability works an obvious forfeiture. It also violates the terms of the Plan itself which provides that a vested participant "shall have a non-forfeitable right to 100% of the Vested benefit. . . ." Plan section 4.04.[4]

The trustees also assert in support of the reasonableness of their interpretation of the Plan that they have consistently applied that interpretation in the past and that allowing pensioners such as Rhoton to re-select benefits would cause adverse economic effects upon the fund. These arguments are unpersuasive. While consistent past interpretation and application of a pension plan is relevant to the reasonableness of a challenged trustee decision, *see Bayles v. Central States, Southeast and Southwest Areas Pension Fund,* 602 F.2d 97, 100 (5th Cir.1979), the trustees have simply not put forward any evidence of a policy or practice applicable to the instant case. The evidence they have presented all relates to application of the 150-week rule of § 4.14(c) and is inapposite to pensioners such as Rhoton who desire to re-select between two previously vested benefits. For this same reason we are unpersuaded by the trustee's assertion of adverse economic impact upon the fund underlying the Plan. The record is devoid of any acceptable data or proof indicating how many individuals have re-

---

4. Under section 1.16, Mr. Rhoton is clearly a vested participant.

quested and have been denied such a change, or how many may be eligible to make such a request. Furthermore, even if the asserted cost considerations were borne out, this would not warrant a different result in this case. The trustees' interpretation of the Plan with regards to pensioners such as Rhoton is without rational basis in the Plan itself. The trustees could not in any case assert the alleged adverse economic effects of altering a practice which is based upon an arbitrary interpretation of the plan as a defense against meritorious claim.

### III.

We take special note that the trustees' interpretation was never communicated to the pensioner. He was never warned about the adverse consequences of his election as the Plan was construed by appellee. At *no time* in the application process was Mr. Rhoton informed that his choice of benefits would be irrevocable. While the record contains a letter from the Fund to Mr. Rhoton informing him of his option to choose either disability or early retirement, notice of the asserted finality of his decision is conspicuously absent. Thus, even assuming arguendo that the trustees' reading of the Plan were plausible and reasonable, neither Rhoton nor his widow were on notice at any time that the Plan should be so construed. Nothing in the record indicates that appellant understood or should have had reason to understand that if Rhoton elected to receive a disability pension, he could not later decide to take early retirement, to which he had earned a vested right.

Accordingly, the decision of the district court is reversed, and judgment will be entered for appellant. The district court will order appellee to make early retirement payments to appellant as provided by the Plan, including retroactive payments to November 7, 1978, together with interest at the legal rate. Appellee will continue to make such payments to appellant that the latter will in due course receive a total of sixty payments dating from November 7, 1978.[5] The district court will award reasonable attorney's fees and costs of this action to appellant, consistent with the relevant provisions of ERISA, 29 U.S.C. § 1132(g).

---

5. The Plan provides for a maximum of 60 monthly retirement payments to a survivor, with credit to the Plan for any retirement payments made to the pensioner before his death. *See* Plan sections 4.09–.10. Since no retirement payments were made to Mr. Rhoton before his death, appellant is entitled to 60 payments.