851 F.2d 134
 Hugh EDWARDS, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; State Farm
Insurance Companies Retirement Plan for the United States
Employees; State Farm Mutual Automobile Insurance Company,
as Plan Administrator and Fiduciary for the State Farm
Insurance Companies Retirement Plan for United States
Employees; and the Continental Illinois National Bank and
Trust Company of Chicago, Trustee of the State Farm
Insurance Companies Retirement Plan for the United States
Employees, Defendants-Appellants.
 Nos. 86-5982, 87-5023.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 3, 1987.
Decided June 29, 1988.
Rehearing and Rehearing En Banc Denied Sept. 8, 1988.
 
 Stephen J. Butler (argued), Smith and Schnacke, Cincinnati, Ohio, J.L. Sallee, Jr., Scott B. Crooks, William J. Rudloff, Harlin, Parker and Rudloff, Bowling Green, Ky., for defendants-appellants.
 Gregory Y. Dunn (argued), Robert Hensley, Horse Cave, Ky., for plaintiff-appellee.
 Before MERRITT, KRUPANSKY and RYAN, Circuit Judges.
 KRUPANSKY, Circuit Judge.
 
 
 1
 The facts are not materially in dispute. This action arose from defendant-appellant State Farm Insurance Companies Retirement Plan (Plan) for United States Employees' ("State Farm's") denial of disability benefits to plaintiff-appellee Hugh Edwards, a former State Farm employee who had worked 15 years for State Farm as a claims representative. State Farm's retirement plan granted benefits to those who had satisfied a service requirement phrased as follows:
 
 
 2
 The sum of the member's attained age and the length of his credited service must be at least 55 years prior to his date of disablement.
 
 
 3
 Article IV, Section 4.1(B).
 
 
 4
 On July 30, 1981, Edwards went on sick leave for 200 days until May 12, 1982. At the end of that time, he filed for disability benefits under the Plan. It was uncontroverted at trial that only if the 200 days sick leave was credited to his length of employment service would the length of service requirement of Section 4.1(B) be satisfied.
 
 
 5
 On November 10, 1981, three months into his sick leave, Jim Hill (Hill), personnel manager, wrote Edwards advising him that he either had already qualified or would qualify for disability income before September 1, 1982. The notice was in accord with a summary of the retirement plan which read in pertinent part that:
 
 
 6
 Time while on sick leave counts as service for plan membership and vesting and also counts as credited service used to determine your retirement income.
 
 
 7
 The provision appeared immediately above a section entitled "Disability Benefits". It is of significance to note at this juncture that Edwards had only been provided with a brief summary of State Farm's employee retirement plan (Summary) in lieu of a copy of the Plan in its entirety.
 
 
 8
 After Edwards had exhausted his paid sick leave, he was placed on unpaid sick leave from May 13, 1982 until February 28, 1983. During that time, he received annual reports styled "Annual statements--U.S. Employee Retirement Plan" which credited him for 365 "days on plan" during 1981 while he was on sick leave a substantial part of the year.
 
 
 9
 On October 12, 1981, Edwards applied for Social Security Disability Benefits. On February 16, 1983, the Retirement Committee and the Plan Administrator informed him that he was ineligible for disability benefits under the Plan. The Committee had decided that his "length of service" accrued only during the period prior to the date of his disablement. Although the date of disablement was not defined in the Summary furnished Edwards by State Farm, the term was defined in the complete text of the Plan in the following language:
 
 
 10
 The words 'date of disablement' shall mean the first workday of any period of time during which the active or Canadian member does not report to work for the company because of total disability by reason of Section 1.36 of the Plan.
 
 
 11
 Ignoring the Summary furnished to Edwards and relying exclusively upon the above language of the Plan, the Committee concluded that Edwards was totally disabled on July 30, 1981 and, therefore, his length of service accrued to that date. Accordingly, the Committee denied the claim solely upon its interpretation of Sect. 4.1(b) of the Plan without addressing the remaining arguments that had been advanced by Edwards in support of his claim.
 
 
 12
 Edwards thereupon filed a complaint in district court and the court concluded that the Committee's decision was arbitrary and capricious, by applying the appropriate standard of review. E.g. Varhola v. Doe, 820 F.2d 809, 813 (6th Cir.1987). The district court also concluded that a committee decision which validates a misleading course of action must be considered inherently arbitrary and capricious. See Rhoton v. Central States, Southeast and Southwest Areas Pension Fund, 717 F.2d 988 (6th Cir.1983) (administrators of pension plan acted arbitrarily and capriciously in denying benefits where summary plan provision and letter from fund generated reliance on the part of claimant).
 
 
 13
 In the instant case, since appellee had elected to summarize its Plan in lieu of providing its employees, including Edwards, with the entire text of the Plan, this court is constrained to consider the impact of the Summary presentation upon Edwards and similarly situated lay beneficiaries. The explicit phraseology of the Summary circulated by State Farm was obviously misleading where it stated that "time while on sick leave counts as service for plan membership." The Committee should have realized that the explicit language of the Summary could or would have caused Edwards and similarly situated unsophisticated lay employees to rely upon State Farm's inadvertant misrepresentation to their detriment. In the instant case the material misrepresentations were aggravated by Hill's reassuring letters to Edwards verifying the summarized definition of "service time" as well as the assurances conveyed by the 1982-1983 reports of his credited service time in the "Annual Statements--U.S. Employee Retirement Plan" provided to him.
 
 
 14
 Section 29 U.S.C.A. Sec. 1022 (West 1985), mandates that a summary description must be "written in a manner calculated to be understood by the average plan participant and ... sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." Sec. 1022(a)(1). "It is grossly unfair to hold an employee accountable for acts which disqualify him from benefits if he had no knowledge of these acts or if these conditions were stated in a misleading or incomprehensible manner in the plan booklets." H.R.Rep. No. 93-533, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Admin. News 4639, 4646.[1]
 
 
 15
 This Circuit has decided that statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern. See Rhoton v. Central States, Southeast & Southwest, 717 F.2d at 989-991. In that case the court relied upon a summary provision to demonstrate that the trustees' interpretation (founded upon the full plan) was "arbitrary and capricious." In Rhoton as in the case at bar, despite language in the text of the full plan which conflicted with the language of the summary plan, "the language of the summary mandate[d]" a decision in favor of the claimant. Id. at 991. In this case, the summary language is more compelling than that in Rhoton. "It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee for reasonably relying on the summary booklet." McKnight v. Southern Life and Health Ins. Co., 758 F.2d 1566, 1570 (11th Cir.1985). See also Govoni v. Bricklayers, Masons & Plasterers, 732 F.2d 250, 252 (1st Cir.1984) (reliance or prejudice from faulty plan summary is ground for relief); Bower v. Bunker Hill Co., 725 F.2d 1221, 1224-25 (9th Cir.1984) (misleading summary plan description, combined with misleading management representations, preclude summary judgment in favor of employer); Hoefel v. Atlas Tack Corp., 581 F.2d 1, 3 (1st Cir.1978) (enforcing summary of retirement plan) cert. denied, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979); Genter v. Acme Scale and Supply Co., 776 F.2d 1180, 1185 (3d Cir.1985) (the summary plan description must not mislead, misinform or fail to inform participant and beneficiaries of the plan); Hurd v. Hutnik, 419 F.Supp. 630, 656-57 (D.N.J. 1976) (despite disclaimer, summary plan statement governs).
 
 
 16
 Even assuming, arguendo, the correctness of the Committee's interpretation of the Plan as "plausible and reasonable," the Committee, like the trustees in Rhoton, 717 F.2d at 992, failed to place Edwards "on notice at any time that the Plan should be so construed." Id. Thus, the reliance that Edwards placed upon State Farm's circulated text of the Summary was reasonable and in keeping with this Circuit's decision in Rhoton. The instant case is factually more convincing than Rhoton since Edwards relied not only on the Summary provisions but also upon Hill's reassuring letter to him and the 1982-1983 annual reports concerning his accrued, credited employment service.
 
 
 17
 Moreover, Edwards relied upon Hill's letter, the 1982-1982 report of his accrued credited employment service, and the Summary to his detriment and abandoned available alternative actions such as staying on the job for a longer period so as to qualify for benefits. It is undisputed that had Edwards returned to work for even a single day after the expiration of his sick leave time, all of the sick leave time before his return would have been counted for purposes of calculating his credited employment service. Minimally, had Edwards been apprised of the Committee's interpretation of the Plan, he could have made "alternative financial plans", to guard against the Plan's shortcomings. Hodgins v. Central States Southeast, 624 F.2d 760, 761 (6th Cir.1980).
 
 
 18
 Although in the instant case, the appellee relied to his detriment upon the language of the Summary, Hill's reassuring letter, and the 1982-1983 report of his accrued employment service, existing precedent does not dictate that a claimant who has been misled by summary descriptions must prove detrimental reliance. Congress has promulgated clear directives prohibiting misleading summary descriptions. This court elects not to undermine the legislative command by imposing technical requirements upon the employee.
 
 
 19
 Accordingly, the decision of the district court is AFFIRMED.
 
 
 20
 RYAN, Circuit Judge (dissenting). I must respectfully dissent.
 
 
 21
 Mr. Edwards' case is a classic example of the maxim that hard cases make bad law. The opinions by the district court and this court's majority convey a sense of understandable heartfelt solicitude for Mr. Edwards and his family. The record shows that Mr. Edwards is a much admired, appreciated, and longtime faithful employee of State Farm who was marked for advancement in the company when, at the age of 40, he became totally disabled following surgical removal of a benign brain tumor. He was never able to return to work thereafter and, at the time this lawsuit was filed, apparently was without visible means of support. These sad facts appear to have blurred the majority's focus on the controlling issue in this case.
 
 
 22
 Despite the suggestion in the majority opinion that Mr. Edwards should prevail on this appeal because of principles of equitable estoppel, "detrimental reliance," and "State Farm's indiscreet misrepresentation to its detriment," the only issue properly before us is whether the State Farm Retirement Committee's decision to deny Mr. Edwards' request for disability benefits was "arbitrary, capricious or in bad faith." Adcock v. Firestone Tire & Rubber Co., 822 F.2d 623, 626 (6th Cir.1987). The parties agree that this is the standard for our de novo review. The issue is not whether the equities are with Mr. Edwards, who presents a most sympathetic claim, or with the corporate employer, State Farm. It is whether the Committee's decision was arbitrary or capricious.
 
 
 23
 That being so, our first task is to determine when a decision to deny benefits is arbitrary or capricious.
 
 
 24
 In Cook v. Pension Plan for Salaried Employees, 801 F.2d 865 (6th Cir.1986), an ERISA action challenging a pension board's interpretation of plan language that resulted in the denial of claimed pension benefits, this court said:
 
 
 25
 [Where] the Board has offered a reasoned explanation of its decision made concerning the application of an ambiguous plan provision, and in accordance with the deference accorded plan administrators under ERISA, we must uphold that decision.
 
 
 26
 Id. at 869.
 
 
 27
 In Gaines v. Amalgamated Insurance Fund, 753 F.2d 288 (3d Cir.1985), the Third Circuit held:
 
 
 28
 Judicial review of interpretation of a pension plan document by the Trustees charged with administering the Plan is limited to whether the Trustees' interpretation is arbitrary and capricious.
 
 
 29
 A plan interpretation should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan.
 
 
 30
 Id. at 289 (citations omitted).
 
 Also, the Second Circuit has held:
 
 31
 Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control.
 
 
 32
 Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan, 698 F.2d 593, 601 (2d Cir.), cert. denied, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983) (citation omitted). Thus, it is well-settled that in ERISA actions, if plan administrators adopt one of two plausible and rational interpretations of the language of the plan in question, one that is rationally related to a valid plan purpose and not contradictory to the plan's plain language, its decision is not arbitrary or capricious. And, even if the plan language can be said to be ambiguous, as is claimed in this case, the rule is that the decision of the plan administrators controls.
 
 
 33
 Whether the Committee's decision to reject Mr. Edwards' claim for disability benefits is an interpretation of the Plan language which is plausible, rational, reasonable, and not contradictory to the Plan's language, even if not the one the court would reach, depends upon the language of the relevant provision of the Plan. In this instance, that provision is Art. IV, Sec. 4.1 which provides the terms of eligibility for disability benefits:
 
 
 34
 (B) The sum of the members' attained age and the length of credited service must be at least 55 years prior to the date of disablement.
 
 
 35
 It is uncontested that Mr. Edwards began working for State Farm on June 22, 1966, became a member of the Plan on September 1, 1967, and that his date of disablement was July 30, 1981. It is indisputable that the period from September 1, 1967, to July 30, 1981, is 13 years and 332 days. It is also uncontested that Mr. Edwards was 40 years and 241 days old on the date of his disablement. Making the computation mandated by Sec. (B) of the Plan, the Committee concluded that the sum of Mr. Edwards' age, 40 years and 241 days, and the length of his "credited service," 13 years and 332 days, is 54 years and 208 days, leaving Mr. Edwards 157 days short of qualifying for disability benefits.
 
 
 36
 Mr. Edwards claims, on the other hand, that while the Committee's arithmetic is correct, it has incorrectly interpreted the meaning of "credited service" in Sec. (B), and that his credited service includes 200 days of sick leave time earned prior to his date of disablement but taken thereafter. If the 200 days are added to the period of credited service computed by the Committee, Mr. Edwards would qualify for the benefits he seeks. Thus, the only contested issue in this case is whether the Committee's interpretation of "length of credited service" in Sec. (B), as not including Mr. Edwards' 200 sick leave days taken after his date of disablement, is "arbitrary or capricious."
 
 
 37
 "Date of disablement" is defined as "the first work day of any period of time during which the active or Canadian member does not report to work for the Company because of total disability by reason of accidental bodily injury or sickness." Art. 1, Sec. 1.36. That date, in Mr. Edwards' case, was July 30, 1981. It is critical to note that under Sec. (B), the "length of credited service" which determines Mr. Edwards' eligibility for benefits under the Plan is "credited service ... prior to the date of disablement." The Committee determined that period to be 13 years and 332 days, the actual number of calendar service years and days between the date Mr. Edwards became a member of the Plan and the date of his disablement. That figure, when added to Mr. Edwards' "attained age" of 40 years and 241 days, leaves him 157 days short of the required 55 years.
 
 
 38
 To pick up those 157 days, Mr. Edwards argues that his "length of credited service" must be construed to include the 200 days of sick leave time he earned and accumulated but did not use prior to his date of disablement. Mr. Edwards makes that argument despite the fact that Sec. (B) specifically provides that disability eligibility requires "credited service ... prior to the date of disablement." Even if Mr. Edwards' 200 sick leave days could somehow be logically construed as "credited service," they clearly were not creditedservice "prior to disablement" since, indisputably, they were taken entirely after July 30, 1981, his date of disablement.
 
 
 39
 Putting the best possible light on it, Mr. Edwards' construction of the language of Sec. (B) is a strained and imaginative effort to find the 157 days of additional credited service he needs to qualify for the disability benefits to which he would have been entitled had he been able to work for another five and one-half months.
 
 
 40
 But even if the expression "length of credited service" in Sec. (B) is ambiguous or is susceptible to more than one construction, including that which Mr. Edwards puts upon the language, this court is bound to defer to the interpretation given the Plan language by its administrators if the construction chosen by the defendant's Committee is a plausible, reasonable, and rational interpretation of the Plan language. Cook, 801 F.2d at 869.
 
 
 41
 The district court stated the case for mandatory judicial deference to the Committee's decision when it observed, in its opinion:
 
 
 42
 Here, the court could as easily decide that post-disability sick leave does not count as credited service as it could decide that it does count.
 
 
 43
 That should have been the end of this case. When the court concluded that the construction put upon the controlling Plan language by the Committee and that put upon it by Mr. Edwards are equally justified, it was duty bound to hold that the decision of the Plan administrators, adopting one of the alternatives, was not, as a matter of law, "arbitrary or capricious." The district court appears to have recognized that and opted therefore to rest its conclusion that the Plan administrators' decision was arbitrary and capricious on a different rationale. The district court stated:
 
 
 44
 Any decision which fails to consider all the relevant issues is obviously arbitrary and capricious.
 
 
 45
 The district court apparently believed that the Committee did not consider Mr. Edwards' argument that "sick leave accumulated before disability and used thereafter counts as credited service," because the argument "was not discussed in the [Committee's] opinion." In that finding, the learned district court was simply clearly erroneous. The minutes of the Committee's April 11, 1987, written decision specifically state:
 
 
 46
 The Retirement Committee has carefully reviewed Mr. Edwards' retirement plan file and other relevant documents, and has carefully considered Mr. Lang's letter and the argument set forth therein.
 
 
 47
 Mr. Lang, who was Mr. Edwards' attorney, had written to State Farm several times prior to the Committee decision, arguing that Mr. Edwards' accumulated sick leave time should be included in the computation of "credited service." That was his consistent plea on Mr. Edwards' behalf, and there is every reason to conclude that his letter of March 3, 1983, to the Committee, which the Committee, "carefully considered," continued to advance Mr. Edwards' only claim throughout this litigation. Unfortunately, that letter has not been made part of the record below. However, State Farm's brief to this court asserts that "the undisputed facts establish that the Committee recognized the issue raised by [Mr.] Edwards" because it "carefully considered Mr. Lang's letter and the arguments set forth therein." Plaintiff has not contested that assertion by the defendant.
 
 
 48
 The plaintiff's arguments for a construction of the Plan, based upon the arguably conflicting language of the Plan's summary document, Mr. Hill's letter, the plaintiff's claimed reliance upon Mr. Hill's letter, and Mr. Edwards' interpretation of the term "credited service," although, to me, strained and logically unpersuasive, are not irrational or entirely unreasonable. Neither is the construction given the Plan by its administrators. Like the district court, the Plan administrators might have decided that Mr. Edwards' accumulated sick leave, which was not taken before the date of disablement, "does not count as credited service as it could decide that it does count." That being so, and given the uncontradicted evidence that the Committee "carefully considered" Mr. Edwards' arguments, the law is clear and settled that the Committee's decision was not arbitrary or capricious.
 
 
 49
 I would reverse.
 
 
 
 [1]
 The dissent overlooks the force of this explicit provision which mandates that the plan summary be understandable and specifically prohibits misleading summary language