**Barbara STRINGFIELD, Plaintiff,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.**

**No. CIV–3–87–898.**

United States District Court, E.D. Tennessee, N.D.

May 5, 1989.

Ronald B. Roe, McNees, Lain & Roe, Oak Ridge, Tenn., for plaintiff.

Fred H. Cable, Jr., Frantz, McConnell & Seymour, Knoxville, Tenn., for defendant.

## MEMORANDUM AND ORDER

JORDAN, District Judge.

This is a civil action brought under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* The plaintiff brings her action under 29 U.S.C. § 1132(a)(1)(B) to recover benefits which she alleges are due under an employee welfare benefit plan. The plaintiff, who suffers from myopia, was treated for her myopia by a relatively new surgical procedure called radial keratotomy, which involves a surgical flattening of the cornea of the eye. When she underwent this surgery, in February and March, 1986, she was covered by reason of her employment by a group insurance plan sponsored by the Tennessee Bankers' Association Group Insurance Trust, which provided insurance coverage under a group insurance policy issued by the defendant. The defendant is sued as the plan administrator.

The defendant has moved for a summary judgment of dismissal of the plaintiff's action. [Doc. 7.] In support of its motion, the defendant has presented evidence that, in February and March, 1986, when she underwent the keratotomies, the plaintiff was covered by a plan option selected by her employer called Plan V, which provided in part that medical insurance coverage was not provided for any services or supplies not reasonably necessary for the insured's medical care, and that one of the criteria by which a service or supply was to be judged reasonably necessary was that it had to be "commonly and customarily recognized throughout the [employee's] Physician's profession as appropriate in the treatment of the patient's diagnosed sickness or injury. The service or supply must

not be educational or experimental in nature, nor provided primarily for the purpose of medical or other research." The plaintiff's claims for benefits to cover her expenses incurred in undergoing the keratotomies were denied on the ground that the defendant in 1986, as it has consistently during the 1980's, considered radial keratotomy to be a surgical procedure which was "investigational" or experimental, and not commonly and customarily recognized by ophthalmologists as appropriate for the treatment of myopia.

The defendant has submitted in support of its motion for a summary judgment the affidavit of its senior claim consultant for its southern group operations, Mr. J.E. Harper, who testified that, in determining that the surgical procedure in issue was "investigational," he relied upon the opinion of the defendant's medical director, as well as upon a statement of the American Academy of Ophthalmology approved August 24, 1985, and reviewed and reaffirmed June 22, 1986, in which that professional organization stated in part,

> Not until a number of studies are completed will it be possible to state definitively the risks and benefits of radial keratotomy. At this time, radial keratotomy is an investigational procedure for the modification of myopia which should be conducted in accordance with adequate review mechanisms and preceded by appropriate informed consent which recognizes the special nature and presently uncertain ramifications of the procedure.

[Doc. 7, attachment.]

The plaintiff testified in her pretrial discovery deposition [Doc. 7, attachment], and again in her affidavit [Doc. 11] that, in February and March, 1986, the only plan description booklet which she had received concerning her group health insurance was one called Plan IX. [Doc. 11, exhibit A.] The exclusionary language in this plan description refers merely to "[a]nything not ordered by a doctor, or not necessary for medical care...." She testified that, prior to undergoing this surgical procedure, she asked the president of her employer whether he thought that the surgery would be covered by the group health insurance, to which he replied, "Certainly." There is no evidence in the record presented to the Court that the plaintiff's employer's president had any authority to speak for the defendant with respect to the administration of the employee welfare benefit plan in issue. The plaintiff admitted that her operating ophthalmologist, Robert S. Dotson, M.D., advised her that some insurance companies did not provide coverage for the expenses associated with radial keratotomies, and that a lot of ophthalmologists did not recommend this surgical procedure. She signed an informed consent form which provided in part that she understood that the surgical procedures to be performed upon her were parts of a clinical investigation which would require follow-up visits to the operating ophthalmologist.

A genuine issue of material fact is presented by the plaintiff's contention that she never received any summary of the group health insurance provided under the employee welfare benefit plan after she received the booklet which described Plan IX, and that this booklet did not provide her with notice of the exclusion from coverage of expenses associated with the keratotomies. *See, e.g., Edwards v. State Farm Mutual Automobile Insurance Company,* 851 F.2d 134 (6th Cir.1988) (conflict between the provisions of a plan and those stated in a plan's summary resolved in favor of the employee). However, even if it were assumed for the purposes of considering this motion for a summary judgment that the plaintiff was bound in February and March, 1986 by the exclusionary language contained in the summary of Plan V, the Court would still be faced with a genuine issue of material fact not susceptible to summary adjudication because of the affidavit testimony of Dr. Robert S. Dotson presented by the plaintiff in opposition to the defendant's motion. [Doc. 10.] Dr. Dotson did not testify merely that he disagreed with his professional colleagues in 1986 about the use of the surgical procedure in issue for the treatment of myopia; instead, he stated in part, "Based upon my medical training and experience, it is my

**72**

professional opinion that refractive kerato-plasty is no longer investigational, nor was it investigational at the time the surgery was performed for Barbara Stringfield.... The surgery I performed for Barbara Stringfield was not purely educational or experimental in nature, nor was it provided primarily for the purpose of medical or other research." Inasmuch as this Court, in reviewing a plan administrator's denial of benefits under an employee welfare benefit plan, must under 29 U.S.C. § 1132(a)(1)(B) review *de novo* the plan administrator's construction of the plan language and the administrator's application of that language to the employee's claim for benefits, *Firestone Tire and Rubber Company v. Bruch*, — U.S. —, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Court cannot, in light of Dr. Dotson's assertion as a professional concerning the status of the surgical procedure in issue at the time it was performed upon the plaintiff, decide under Fed.R.Civ.P. 56 the issue of the application of the plan's exclusionary language to this surgical procedure in this case. It will be necessary to consider the issues presented more fully, at the trial of this action.

For the reasons stated, the Court finds the defendant's motion for a summary judgment of dismissal of the plaintiff's action [Doc. 7] not well taken, and it is DENIED.