**Janice BRIGHT, Plaintiff,**

v.

**SKW ALLOYS GROUP INSURANCE PLAN and Metropolitan Life Insurance Co., Defendants.**

**Civ. A. No. C90–0261–P(H).**

United States District Court,
W.D. Kentucky,
Paducah Division.

June 7, 1993.

Craig W. Housman, Housman & Sparks, Paducah, KY, for plaintiff.

Len W. Ogden, Jr., Paducah, KY, Donald V. Ferrell, Jelliffe, Ferrell & Morris, Harrisburg, IL, for defendants.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Plaintiff, Janice Bright, moves for summary judgment to recover $37,000 of contributory accidental death insurance benefits on the life of her deceased husband, James Bright, a participant in a welfare benefit plan provided by his employer, SKW Alloys, Inc. Plaintiff sues the plan entity, SKW Alloys Group Insurance Plan ("SKW Plan"), and the insurance carrier of the plan, Metropolitan Life Insurance Company ("MetLife"), to enforce the SKW plan pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) (1985). Defendants filed joint motions for summary judgment claiming that Plaintiff is not entitled to these benefits because the SKW Plan in effect at the time of Mr. Bright's death did not include coverage for contributory accidental death insurance benefits. For the reasons stated below, the Court rules that Plaintiff is entitled to relief.

### I.

Plaintiff's decedent, James H. Bright, was an employee of SKW Alloys, Inc. for more than twenty years before the occasion of his accidental death on October 29, 1988. At one time, SKW provided salaried employees, including Mr. Bright, with two types of life insurance coverage, non-contributory term life and optional contributory term life. SKW also provided two types of accidental death and dismemberment insurance coverage, non-contributory and optional contributory. The death benefits of each category

were of equal amounts depending on an employee's salary range.

As the beneficiary of her husband's life insurance benefits, Plaintiff submitted a claim to SKW's Manager of Industrial Relations, R.H. Sullivan, who determined that Mr. Bright's coverage included both categories of term life insurance in the total sum of $74,000 but included only the non-contributory accidental death coverage for $37,000. He in turn submitted same to MetLife who paid Plaintiff $111,000 in benefits on or about January 12, 1989. Thereafter, Plaintiff made a demand for an additional $37,000 in contributory accidental death benefits on the basis of her husband's certificate of insurance, which indicated that Mr. Bright participated in all four categories of life coverage. MetLife denied Plaintiff's demand, on the ground that the SKW Plan was amended to delete contributory accidental death coverage prior to Mr. Bright's death in October 1988.

Defendants do not dispute that Mr. Bright's coverage included non-contributory and contributory accidental death benefits in 1984, the year he became a salaried, participating employee. Defendants contend, however, that the SKW Plan was amended between October 1986 and January 1987 eliminating both categories of accidental death coverage. A letter dated July 2, 1986 indeed establishes that MetLife intended to discontinue carrying the accidental death coverage, but the letter also indicates that the SKW Plan would continue this coverage by replacing it through another insurance carrier.[1] A summary plan description[2] dated June 1987 in fact makes no mention of any accidental death coverage. In December 1988, after Mr. Bright's death, a one page addendum to the 1987 summary shows that MetLife continued carrying the non-contributory accidental tal death coverage. Defendants state that once efforts to secure another carrier were unsuccessful, MetLife continued carrying non-contributory accidental death coverage. The addendum is consistent with MetLife's decision to pay Plaintiff $37,000 in non-contributory accidental death benefits and its denial of contributory accidental death benefits.

■ No one knows whether Mr. Bright was actually apprised of the fact that contributory accidental death coverage would not be available. His insurance enrollment cards indicate that he continued an intention to participate in all four categories of life coverage. For whatever it is worth, Plaintiff concedes that the 1987 summary was in all probability distributed to Mr. Bright among all other employees.[3]

Plaintiff emphasizes, however, that the plan itself, policy # 24947–G, shows no applicable amendment, and that Mr. Bright's payroll deductions remained the same through the years 1985 through 1987. Nevertheless, Defendants rely heavily on the 1987 summary that indicates, by omission, that the previous plan was modified in the elimination of accidental death coverage.

## II.

■ Because the validity of Plaintiff's claim rests on the terms of the insurance coverage, the Court must interpret Plaintiff's rights under the SKW Plan, like any other contract, under a de novo standard of review. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).[4] Resolution of this case, therefore, turns on an issue of law rendering summary disposition appropriate.

---

1. SKW's insurance consultant, Alexander and Alexander, sent the letter to MetLife's Michael Colao stating that "the current Accidental Death and Dismemberment program is being eliminated. This coverage will be replaced by a casualty type program underwritten by a specialty insurer" and "the current Metropolitan AD & D plan will be eliminated and replaced by a casualty carrier program." (Def's Mo. # 39, Exhibit F.)

2. 29 U.S.C. § 1022(a).

3. Failure to comply with ERISA's notice requirements does not provide a basis for a substantive remedy under § 1132(a)(1)(B). *Lewandowski v. Occidental Chemical Corp.*, 986 F.2d 1006 (6th Cir.1993).

4. The Court found no evidence in Defendants' reference to the 1987 summary (Def's mo. for summary judgment # 39, exhibit A to exhibit 1 at p. 40.) of a grant of discretionary authority under the SKW Plan. The deferential standard of review as otherwise contemplated by *Bruch* is therefore not applicable.

### III.

■ To determine whether Plaintiff is entitled to contributory accidental death benefits, the first point of reference would logically be policy # 24947–G. *Musto v. American General Corp.,* 861 F.2d 897, 900 (6th⌐Cir. 1988). ERISA requires every employee benefit plan to be "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). Defendants do not dispute that at least prior to October 1986 this policy provided contributory accidental death and the Plaintiff's decedent participated in this coverage. The issue is whether the policy was thereafter amended to eliminate accidental death coverage. Amendment 10, dated May 15, 1984, and amendment 11, dated October 6, 1989 are attached to Plaintiff's response to Defendants' motion for summary judgment. Neither amendment contains language to eliminate the accidental death coverage.

The issue then becomes whether this establishes that policy # 24947–G was never amended and must, therefore, by its terms provide coverage to Plaintiff. Defendant's argue that the 1987 summary constitutes a "written instrument" which effectuates the elimination of the accidental death coverage. In support of this argument, Defendants rely on *Edwards v. State Farm Mutual Automobile Insurance Co.,* 851 F.2d 134, 136 (6th Cir.1988), in which the court stated that "statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern."

*Edwards* is distinguishable on its facts, but more significantly the application of the *Edwards* rule in this case would not promote the same nor a legitimate objective. In *Edwards* the plaintiff relied to his detriment on a summary which affirmatively conflicted with the actual terms of the policy concerning eligibility for disability benefits. The *Edwards* court stated that "it is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to

the employee for reasonably relying on the summary booklet." *Edwards,* at 136 (quoting *McKnight v. Southern Life and Health Ins. Co.,* 758 F.2d 1566, 1570 (11th Cir.1985)).

In this case, the inconsistency, if any, between the plan and the summary involves affirmative language in the policy and an omission of any coverage in the summary. Even if the summary had affirmatively distinguished the amended plan from the prior plan, the result would in all likelihood be the same. Had the summary explicitly apprised Mr. Bright that he no longer had additional accidental death coverage, reliance on this statement would not work to his detriment but would have reasonably prompted him to purchase coverage from another carrier. The *Edwards* court was not concerned with construing a plan summary for the benefit of experts in insurance to comport with intended modifications that were not incorporated by an amendment to the plan nor even affirmatively set forth in the plan summary.[5]

In *Musto v. American General Corp.,* the Sixth Circuit admonished the district court's assumption that the origin of a company's obligation under its group insurance plan lay in the plan summary and not in the plan due to their inconsistencies. 861 F.2d 897, 905 (6th Cir.1988). Although the *Musto* court ultimately resolved the case by determining that the language of the plan summary and the plan were reconcilable, the Court believes that in this case the SKW plan, not the 1987 summary, defines the insurer's obligations.

■ ERISA requires that employee benefit plans to be established and maintained pursuant to a "written instrument," 29 U.S.C. § 1102(1), of which participants are to be furnished a "summary plan description," 29 U.S.C. § 1022(a)(1). Although ERISA does not require the terms of an ERISA plan to be contained in a single document, *Rinard v. Eastern Co.,* 978 F.2d 265, 268 n. 2 (6th Cir.1992), it does not stand to reason that the 1987 plan "summary" replaces the SKW plan "instrument." *Musto,* 861 F.2d at 905.

---

5. Section 1022(a)(1) requires "any material modification in the terms of the plan" to be "written

in a manner calculated to be understood by the average plan participant."

More importantly, the 1987 summary, itself, refutes this proposition. The final page of the 1987 plan summary states, "This booklet briefly describes the SKW Group Insurance Plan ... Application of the Plan to specific cases is determined by provisions of the Group Insurance Policy and by your Certificate of Insurance." (Def's mo. for summary judgment # 39, exhibit A of exhibit 1 p. 53.)

The Court concludes that the 1987 summary does not modify policy # 24947–G. Plaintiff has, therefore, carried her burden on the motion for summary judgment.

## IV.

The Court holds that according to the terms of the SKW plan, Plaintiff is entitled to $37,000 of contributory accidental death benefits. Having resolved Plaintiff's claim on the foregoing basis, the Court need not reach Plaintiff's alternative theories of relief.

The Court is entering an Order consistent with this Memorandum Opinion.

## ORDER AND JUDGMENT

This ERISA action is before the Court on motion of Plaintiff for summary judgment and on the joint motions of Defendants for summary judgment. Having reviewed the parties memoranda, exhibits, and depositions, the Court has issued a Memorandum Opinion setting forth its conclusions. Therefore, the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the motion of Defendants for summary judgment is OVERRULED;

IT IS FURTHER ORDERED that the motion of Plaintiff for summary judgment is SUSTAINED and Plaintiff shall receive judgment against the Defendants in the amount of $37,000 with interest from October 29, 1988.

IT IS FURTHER ORDERED that Plaintiff shall have twenty (20) days in which to file a motion for attorney's fees and Defendants shall have twenty (20) days to respond. The parties shall attempt to agree upon the attorney's fees before filing memoranda.

This is a final and appealable order and there is no just reason for delay.