NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  06a0130n.06
Filed:  February 16, 2006

No. 04-6478

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DIANE BROOKING, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| HARTFORD LIFE AND ACCIDENT | ) | O P I N I O N |
| INSURANCE COMPANY, | ) | |
| | ) | |
| *Defendant-Appellee.* | ) | |

**BEFORE:**    **COLE, CLAY, and GIBBONS, Circuit Judges.**

**R. GUY COLE, JR., Circuit Judge.**  Plaintiff Diane Brooking filed an action against

Defendant, Hartford Life and Accident Insurance Company ("Hartford Life"), for allegedly violating

the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1132(a)(1)(B), by denying

Brooking long-term disability benefits.  The district court denied Brooking's petition to reverse

Hartford Life's determination that Brooking was able to return to work and thus not entitled to

disability benefits.  Brooking appealed Hartford Life's decision to the district court, arguing that:

(1) the district court should review Hartford Life's decision *de novo*; (2) the plan administrator's

decision was arbitrary and capricious; and (3) the district court erred in refusing to take judicial

notice of three documents.

For the following reasons, we reverse the judgment of the district court and remand this

matter for further proceedings consistent with this opinion.

**I.**

In 1979, plaintiff Diane Brooking began working as a registered nurse for Bluegrass Regional Medical Center in Frankfort, Kentucky. Brooking sustained a lower back injury in 1986, when she tried to catch a 15-20 pound cardiac monitor that shifted in the back of a moving ambulance. Brooking's pain intensified over time, rendering her disabled to work in 1987. A myelogram and diskogram revealed that Brooking had a disk herniation at L5-S1 of her vertabrae. Brooking underwent an anterior lumbar fusion in May 1987. Although the surgery seemed successful initially, Brooking's disks ultimately failed to fuse. By 1991, Brooking's pain resurfaced. Brooking was examined by Dr. Dale Goodin, who referred her to St. Joseph's Pain Center, where she received a series of lumbar epidural steroid injections for the purpose of relieving her pain. Shortly thereafter, Brooking was diagnosed with degenerative arthritis and degenerative disk disease in her spinal region.

In June 1995, one of Brooking's doctors opined that she was unable to work and should be on total disability for three months. Brooking ceased work at Bluegrass and applied for and began receiving social security benefits in October 1995. Brooking also applied to Hartford Life, the administrator of her employer's benefits policy, for long-term disability benefits. Hartford Life approved her application and she began receiving disability benefits in September 1996. For the first twenty-four months of disability, Brookings was entitled to receive benefits as long as she was unable to perform the duties of her own occupation. Beyond those first twenty-four months, Brookings was entitled to receipt of benefits if she were unable to perform *any* occupation for which she was, or may reasonably become, qualified based on training, education, or experience.

From 1995 onward, Brooking continued to suffer back pain. She had operations fusing her disks between L3-L4, L4-L5 and L5-S1of her vertabrae in 1997 and was deemed unable to work by

Dr. Goodin. Brooking experienced pain in her right hip, sacroiliac,[1] and bursas,[2] for which she received multiple injections. She was placed on a variety of pain medications, which provided little relief. During this period, Brooking's treating physician appears to have been Dr. William Witt, who saw her regularly.

On November 6, 2001, an intrathecal morphine pump[3] was surgically implanted between Brooking's L2 and L3 vertebrae. Brooking continued to experience heightened back pain and significant pain in her right hip, which would occasionally dislocate. It is undisputed that sitting was Brooking's most significant pain-provoking position. Dr. Witt opined that Brooking was unable to sit for more than one hour at any given time, or for more than four hours total during a single day.

On April 23, 2002, Hartford Life contacted Dr. Witt in order to evaluate Brooking's eligibility for continued receipt of long-term disability benefits. Dr. Witt recommended that Brooking undergo a Functional Capacity Evaluation (FCE), which she did on August 2, 2002. At that point, Dr. Witt reported that on a scale of one to ten, Brooking's pain was at level three. Following the FCE, Dr. Ekaterina Malievskaia, a doctor employed by Hartford Life, concluded that Brooking was able to work at a sedentary-to-light physical demand level. Dr. Brian Mercer, a neurologist employed by Hartford Life, concluded that Brooking could function at a sedentary level

---

[1]The sacroliac is the region of the joint between the sacrum and the ilium. The sacrum is a triangular bone made up of five fused vertebrae and forming the posterior section of the pelvis. The ilium are the uppermost and widest of the three bones constituting either of the lateral halves of the pelvis.

[2]A bursa is a sac or saclike bodily cavity, especially one containing a viscous lubricating fluid and located between a tendon and a bone or at points of friction between moving structures.

[3]An intrathecal pump is a catheter, in this case placed between Brooking's L2 and L3 vertebrae. The pump delivers morphine on a twenty-four hour schedule, and is designed to provide more pain relief than oral medications.

with restrictions and limitations outlined by the FCE. Neither Dr. Mercer nor Dr. Malievskaia actually examined Brooking.

In response to Dr. Malievskaia's report, Dr. James Templin reported that Brooking's pain was not stable and that she was totally disabled. In Dr. Templin's opinion, the argument "that this level of pain intensity would not prevent someone from functioning in the sedentary or light occupation is ridiculous." An evaluation completed by Dr. Templin indicated that Brooking's pain ranged between three and nine within a given week, with an average of five. According to Dr. Templin, "[w]hile this is an improvement over her premorphine pump placement level, there still has not been any substantial pain reduction."

Hartford Life terminated Brooking's benefits on December 23, 2002, based on its conclusion that she was capable of performing the duties of two sedentary positions: (1) Cardiac Monitor Technician; and (2) Nurse Consultant. Hartford Life did not identify any other positions which Brooking could perform.

Brooking appealed Hartford Life's decision to the district court. She included in that appeal three documents that were not a part of the administrative record: (1) the Employee Benefits Handbook; (2) the "Components of the Definition Trailer" from the Dictionary of Occupational Titles; and (3) the job definitions set forth in the Department of Labor's Dictionary of Occupational Titles. Hartford Life opposed Brooking's request to reverse its decision and moved to strike consideration of the three documents. The district court granted Hartford Life's motion to strike the proffered evidence and denied Brooking's petition to reverse the administrative decision. This timely appeal follows, over which we have jurisdiction pursuant to 28 U.S.C. § 1291.

- 4 -

## II.

### A.  Standard of Review

Although we generally review a district court's decision in an ERISA benefits case *de novo*, when the plan administrator has discretionary authority to construe and interpret the benefit plan at issue, our review is under the arbitrary and capricious standard.  *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361 (6th Cir. 2002).  We must determine, therefore, whether the plan sufficiently provides such discretionary authority to the plan administrator.

Brooking argues that because the Employee Benefits Handbook, which contains a Summary Plan Description ("SPD"), is silent as to Hartford Life's discretion to determine eligibility for benefits, this Court should review its decision *de novo*, despite the fact that the plan itself contains language vesting discretion in Hartford Life.[4]  We have held previously that where an employee benefits handbook contains a summary plan description, the language of that summary controls over any conflicting language in the plan itself.  *Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 850-51 (6th Cir. 2000).  Because the plan administrator has the burden of proving that the plan expressly provides such discretion, Brooking argues that this Court should find a conflict between the SPD, which in this instance is silent as to discretion, and the plan itself.  In response, Hartford Life argues that the SPD's silence cannot be construed as a conflict with the language of the plan itself, and thus the vesting language in the plan controls.

---

[4]Hartford Life argues that we should be barred from considering the SPD because it was not a part of the administrative record.  In *Bass v. TRW Employee Welfare Benefits Trust*, No. 02-5768 86 F. App'x 848, 851 (6th Cir. Jan. 21, 2004), we held that the rule preventing a reviewing court from considering evidence outside the administrative record does not preclude consideration of the plan documents.  "The case law makes clear . . . that the rule was intended to prevent the courts from looking past the evidence of disability-medical reports, correspondence, test results, and the like-considered by the plan administrator."  *Id.*  We find the reasoning in *Bass* persuasive, and thus consider the SPD.

In *Edwards v. State Farm Mutual v. Automobile Insurance. Co.*, 851 F.2d 134 (6th Cir. 1988), we held that when the language in a summary plan description conflicts with the language in the plan, the summary will govern. Because most employees receive the summary plan description in lieu of the plan itself, their reliance on the language contained in that document is reasonable. *Id.* at 136-37. Following *Edwards*, we have treated the language of summary plan descriptions as binding when it is in conflict with language of the plan. *See Univ. Hosp. of Cleveland*, 202 F.3d at 850-51; *Helwig v. Kelsey-Hayes Co.*, 93 F.3d 243, 249 (6th Cir. 1996).

We have declined to extend *Edwards*, however, to those situations in which the summary is silent on a particular topic discussed by the plan. *See Sprague v. General Motor Corp.*, 133 F.3d 388, 401 (6th Cir. 1998) ("[T]he principle announced in *Edwards* does not apply to silence.") Under *Sprague*, it is clear that when a summary plan description is silent as to an administrator's discretion, the language in the plan governs. Thus, the district court did not err in reviewing Hartford Life's decision under the arbitrary and capricious standard.

## B. Arbitrary and Capricious

Where "a plan vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005). If the administrative record can support a "reasoned explanation" for Hartford Life's decision, the decision is not arbitrary or capricious. *Id.* at 379 (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)). Although deferential, our review is still searching. "The arbitrary-and-capricious . . . standard does not require us merely to rubber stamp the administrator's decision." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161,

172 (6th Cir. 2003)). "Deferential review is not no review, and deference need not be abject." *McDonald*, 347 F.3d at 172. In the context of the record as a whole, we consider many factors to determine whether a plan administrator's decision is arbitrary and capricious. *See, e.g., Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Although the fact that Hartford Life both administers the plan and is responsible for paying the claims on the policy does not change our review of the Hartford Life's decision, *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998), we consider the conflict of interest as a factor in determining whether the administrator's decision was arbitrary and capricious. *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 694 (6th Cir. 1989). "Courts should be particularly vigilant in situations where, as here, the plan sponsor bears all or most of the risk of paying claims, and also appoints the body designated as the final arbiter of such claims." *Univ. Hosp. of Cleveland*, 202 F.3d at 846 n.4.

It is uncontradicted that Brooking is unable to sit for more than four hours a day. The FCE indicates that Brooking can maintain a sitting position on an "occasional basis," which is defined as up to one-third of an eight-hour day. Furthermore, the FCE indicates that sitting is Brooking's most significant pain-provoking activity. Dr. Witt's opinion that Brooking "can sit for no more than 1 hour at a time for 4 hours total due to pain" is entirely consistent with the results of the FCE, which state that Brooking can sit only occasionally, or two hours and forty minutes of an eight-hour day. Furthermore, the FCE evidences not only that Brooking is unable to sit for more than one-third of a business day, she is unable to do the work associated with a position that requires prolonged sitting. Measuring Brooking's ability to complete "[l]owered work in sitting," the FCE concludes "Never. Could not assume position due to spinal inflexibility, presence of spinal pump in abdominal region, and soft tissue interposition creating difficulty with respiration."

Hartford Life concluded that Brooking should be able to work as either a cardiac monitor technician or nurse consultant, both of which are classified as "sedentary." According to U.S.Department of Labor definitions, sedentary jobs require sitting for most of the day.[5] There is no evidence that Brooking could perform either of these jobs, or any other sedentary job.

Given that Brooking cannot sit for more than four hours a day, Hartford Life has not offered a reasoned explanation for its decision to terminate her benefits. Our conclusion is entirely consistent with this Circuit's precedent. In *McDonald*, we held that it was arbitrary and capricious for a plan administrator to terminate benefits without specifying the kind of work the claimant could perform. 347 F.3d at 172. Just as a plan administrator must conduct some inquiry into the nature and transferability of a claimant's job skills, a plan administrator must make some inquiry into whether the jobs selected are ones that the claimant can reasonably perform in light of specific disabilities. *See, e.g., Quinn v. Blue Cross &Blue Shield Ass'n*, 161 F.3d 472, 476 (7th Cir. 1998) (holding that

---

[5]We take judicial notice of 20 CFR § 220.132, which defines "sedentary" and "light work," pursuant to Fed. R. Evid. 201:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and the other sedentary criteria are met.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. If the claimant can do light work, the Board determines that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 220.132(a)-(b). We do not take judicial notice of the Dictionary of Occupational Titles.

plan administrator's decision to terminate benefits based on its belief that claimant could return to work was arbitrary and capricious when the program secretary did not know, *inter alia*, what the job duties entailed); *Hillock v. Continental Cas. Co.*, No. 02 C 5126, 2004 WL 434217, at *5 (N.D.Ill. Mar. 2, 2004) (holding that plan administrator's assertion that claimant's job was flexible enough to accommodate her physical disability based only on a two-page description of her job was arbitrary and capricious). Hartford Life has not identified any job that Brooking can reasonably perform in light of her specific disabilities.

Hartford Life has also argued that Brooking failed to submit objective evidence of her pain. As many courts have observed, pain often evades detection by objective means. *See, e.g., Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003). This caution need not be taken into account in this case, however, because the record contains objective evidence of Brooking's pain. The FCE states that "[Brooking] demonstrated external indicators of pain such as facial grimacing, and deviations in posture and movement patterns." The FCE also notes that Brooking required frequent adjustments while maintaining a seated position, and that she possessed an antalgic gait[6] due to right hip pain. Hartford Life's failure to account for such objective evidence further supports our conclusion that its decision is arbitrary and capricious. *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 297 (6th Cir. 2005).

It is uncontested that Brooking's severe physical limitations restrict the type of work she is able to perform. Based on the uncontested fact that she cannot maintain a seated position for more than an hour at a time and that sitting provokes considerable pain, work in a sedentary job is clearly not possible. *See Moon*, 405 F.3d at 379 (holding that plan administrator's decision is arbitrary and

---

[6]An antalgic gait is a limp in which a phase of the gait is shortened on the injured side to alleviate the pain experienced when bearing weight on that side.

capricious because record could not support a reasoned explanation for termination of benefits). Brooking is not able to perform the positions of cardiac monitor technician or nurse consultant which, on their face, require more than four hours of sitting a day. Given that Brooking's termination runs contrary to the opinions of her treating physician, the objective evidence in the administrative record, and the conclusions of the FCE, Hartford Life's decision to deny her long-term disability benefits was arbitrary and capricious.

## III.

Hartford Life's decision disregarded the clear medical evidence in the record, the medical opinion of Brooking's doctors, and even the opinions of the doctors retained by Hartford Life. The administrative record evidences that Brooking is disabled under the provisions of the benefits policy and is entitled to have her Petition granted.

For the foregoing reasons, we **REVERSE** the decision of the district court and **REMAND** with instructions to the district court to grant Brooking's petition to reverse the administrative decision, thereby granting the long-term disability benefits due Brooking under the plan, along with any applicable interest.