Mary Ellen LAKE; Calvin Pauley; Genevieve Blanton; Anna Mink; Vestil Perry; Russell Buffington, and all other persons similarly situated, Plaintiffs–Appellants,

v.

METROPOLITAN LIFE INSURANCE COMPANY and General Electric Company, Defendants–Appellees.

No. 94–3852.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 22, 1995.

Decided Jan. 19, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied March 29, 1996.

Dianne R. Newman, Sternberg, Newman & Associates, Akron, OH, Jon F. Holder (argued and briefed), Holder & Grover, Portland, ME, for Mary Ellen Lake, Calvin Pauley, Genevieve Blanton, Anna Mink, Vestil Perry and Russel Buffington.

John T. Meredith (argued and briefed), Squire, Sanders & Dempsey, Cleveland, OH, Joseph Trovato (briefed), New York City, Linda Wintner, Metropolitan Life Ins. Co., New York City, Allen M. Marcus (argued), Metropolitan Life Ins. Co., New York City, for Metropolitan Life Ins. Co. and General Electric Co.

Before: NORRIS, SUHRHEINRICH, and GIBSON,* Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Plaintiffs, former General Electric Company ("GE") employees who became disabled

---

* The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

while at GE, brought suit under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C.A. §§ 1001–1461 (West 1985 & Supp.1995), to recover insurance benefits allegedly due them. At issue is the proper interpretation of an employee welfare plan providing long-term disability insurance coverage administered by GE and underwritten by Metropolitan Life Insurance Company ("Met Life"). The district court granted summary judgment in favor of defendants, holding that Met Life could (1) recoup the amount of retroactive social security disability insurance ("SSDI") awards, and (2) reduce monthly payments by the amount of social security early retirement benefits payable to its insureds. Plaintiffs appeal from each of these holdings.

We conclude that the district court applied an incorrect standard in reviewing Met Life's interpretation of the insurance contract. However, because the results do not change when the correct standard is applied, we AFFIRM the grant of summary judgment.

## BACKGROUND

GE established the Long–Term Disability Income Plan for Hourly Workers (the "GE Plan" or "Plan") in 1970 as the result of a collective bargaining agreement. To meet its obligations to the unions, GE purchased from Met Life a group long-term disability insurance policy incorporating the terms of the Plan. Participation is open to union and non-union employees, and is entirely voluntary. All contributions to the GE Plan have been made by participants.

Plaintiffs are six former GE employees who became disabled while at GE and who received long-term disability ("LTD") benefits under the Plan.[1] Mary Ellen Lake, Genevieve Blanton, and Anna Mink (collectively, the "Lake Plaintiffs") each had her benefits reduced after receiving a retroactive lump-sum SSDI award. Calvin Pauley, Russell Buffington, and Vestil Perry (collectively, the "Pauley Plaintiffs") each received reduced benefits as a result of being eligible for social security early retirement benefits. Both groups of plaintiffs challenge these reductions as violations of the terms of the GE Plan.

With respect to the Lake Plaintiffs, Met Life's initial practice under the Plan was to reduce the LTD benefits payable to Plan beneficiaries by the amount of SSDI benefits either actually received or anticipated. GE and Met Life revised this procedure in 1971 to permit Plan beneficiaries to receive LTD benefits without a reduction for anticipated SSDI benefits provided that the insured signed a reimbursement agreement (the "Reimbursement Agreement"). The Reimbursement Agreement obligated the insured to reimburse Met Life in the amount of any retroactive SSDI award received, and permitted Met Life to reduce or "carve-out" future LTD benefits to recover such amount if necessary.

Lake filed a claim under a version of the Plan in effect in 1985; Blanton and Mink filed claims under the Plan in effect in 1982. All three signed a Reimbursement Agreement and received unreduced LTD benefits. As required by the Plan, the Lake Plaintiffs applied for SSDI benefits. The Social Security Administration initially denied these applications, but subsequently reversed itself. Lake, Blanton, and Mink each received a retroactive lump-sum SSDI award. Met Life collected or is collecting the amount of this award by withholding a portion of each of the Lake Plaintiffs' monthly LTD benefits.

The Pauley Plaintiffs also had their benefits reduced as the result of a long-standing practice by Met Life. Beginning in 1971, when the matter first arose, until the Plan was amended in 1988,[2] Met Life reduced a participant's LTD benefits by the amount of social security retirement benefits paid or

---

1. Plaintiffs purport to be a class consisting of two subclasses. The district court entered summary judgment against the individual plaintiffs without deciding the issue of class certification.

2. GE amended the Plan in 1988 as part of a settlement agreement with the Equal Employ-

ment Opportunity Commission over an age discrimination claim. After the amendment, the carve-out for social security retirement benefits applied only to benefits payable after age sixty-five and not, as had been the previous practice, to benefits payable after age sixty-two.

payable to the participant. A Plan beneficiary who turned sixty-two, and who thereby became eligible to receive social security early retirement benefits, received reduced Plan benefits.

Pauley, Buffington, and Perry became disabled, respectively, under the 1985, 1982, and 1976 versions of the GE Plan. Each had his LTD benefits reduced as a result of being eligible to receive social security early retirement benefits. The Pauley Plaintiffs elected to receive these early retirement benefits, and, as a result, now receive lower monthly social security payments than if they had waited until age sixty-five. This reduction is permanent even though the Pauley Plaintiffs have ceased to receive LTD benefits.

GE distributes to participating employees a document containing the terms of the Plan (the "Plan Document") and a summary of the Plan Document (the "SPD") as a single package. Section II of the Plan, entitled "Your Benefits," describes the benefits payable upon disability. The relevant portion of Section II, as it appeared in 1982, 1985, and 1988, is set forth below. (The italicized portions were added in 1985; the bracketed portions in bold were added in 1988.)

> Benefits will be paid monthly and will be one twenty-fourth of your normal straight-time annual earnings reduced by (1) any disability pension benefits paid under the GE Pension Plan ... (2) any primary Social Security [**disability**] benefits [**or primary Social Security retirement benefits payable at age 65**], (3) benefits under a Workers' Compensation or Occupational Disease Law, and (4) any benefits available in conformity with Federal, State, Commonwealth or Dominion laws, of the United States or Canada. *If an overpayment of benefits occurs for any reason under this Plan, the amount of the overpayment will be then due and owed to the carrier.* If the benefits referred to in (2), (3), or (4) above would have been payable to you upon timely application, you will be considered as receiving such benefits....

> *You are responsible for promptly notifying the carrier if any award or settlement of benefits derived from any source described in (2), (3), or (4) above is, or will become, payable retroactively. The carrier may, in addition to other remedies it may have to recover any overpayment, reduce future benefits otherwise payable under the Plan.*
>
> ...

(Respectively, J.A. at 549, 560, 570.) The 1976 Plan is identical in all pertinent aspects to the 1982 Plan.

The corresponding SPDs also describe the benefits payable to Plan beneficiaries. The 1985 SPD states in relevant part:

> **You receive 50% of your monthly pay from the LTD Insurance Plan** in combination with other disability income benefits subject to a minimum benefit of $50 per month.
>
> Your monthly LTD benefit depends upon the monthly income you're entitled to from the following sources:
>
> — Primary Social Security (just the benefit payable to you)
>
> — Workers' Compensation or similar laws (payable for job-related illness or injury)
>
> — any disability benefits you apply for and are granted under the GE Pension Plan, *and*
>
> — any disability benefits available under any government laws.

(J.A. at 157.) The above-quoted language is representative of all of the SPDs; any variations between the SPDs of different years are immaterial for purposes of this litigation.

The Lake and Pauley Plaintiffs filed a class action under 29 U.S.C.A. § 1132(a)(1)(B),[3] claiming that the various reductions in benefits violated Section II of the Plans in effect when they became disabled. In addition, the Lake Plaintiffs claimed that Met Life's practice of recouping retroactive SSDI awards violated the clear notice requirement of 29 U.S.C.A § 1022.

---

**3.** Section 1132(a)(1)(B) permits the beneficiary of an ERISA-governed plan to bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

The district court granted defendants' motion for summary judgment, thereby rendering the issue of class certification moot. The court ruled that Met Life's interpretation of Section II of the various Plans was neither arbitrary nor capricious, and that Met Life had therefore acted within the meaning of Section II in reducing the LTD benefits of both the Lake and Pauley Plaintiffs. The district court also held that the 1982 and 1985 SPDs properly notified Plan participants of Met Life's practice of recoupment.

On appeal, the Lake and Pauley Plaintiffs first contend that the district court erred in employing an arbitrary and capricious standard of review. The Lake Plaintiffs also argue that Met Life's practice of withholding future LTD benefits to recover the amount of retroactive SSDI awards is impermissible under the 1982 Plan because Section II does not explicitly authorize recoupment. They further contend that the recoupment provision in the 1985 Plan is ineffective because the term "overpayment" is ambiguous and should be construed against defendants under the doctrine of contra proferentem. Similarly, the Pauley Plaintiffs argue that the carve-out for "primary Social Security benefits" in the pre–1988 Plans refers, in context and in light of the relevant SPDs, to SSDI benefits only and not to retirement benefits.

## ANALYSIS

We review the district court's grant of summary judgment de novo. *Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1247 (6th Cir. 1991). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the district court's decision, we view the evidence and pleadings on file in the light most favorable to the nonmoving party or parties. *Wells,* 950 F.2d at 1247.

As an initial matter, this court must determine whether to apply a de novo or an arbitrary and capricious standard of review to Met Life's interpretation of Section II. It is now well settled that deferential review is appropriate only where the benefits plan clearly grants discretionary authority. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *Wulf v. Quantum Chem. Corp.,* 26 F.3d 1368, 1372 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 667, 130 L.Ed.2d 601 (1994). Further, a plan may grant discretionary authority over some aspects without granting such authority over others. *Anderson v. Great West Life Assurance Co.,* 942 F.2d 392, 395 (6th Cir.1991). As the court in *Anderson* noted: "[T]he area within which discretion can be exercised or the amount of discretion exercised depends on the scope of the grant [of authority].... A plan administrator has exactly the amount and type of discretion granted by the plan, no more, and no less." *Id.* at 395.

The district court found that Section V of the Plan Document entitled "How to File a Claim" grants Met Life broad discretion and that this discretion encompasses decisions concerning the level of benefits. Section V has read at all relevant times:

> [Met Life] will *make all decisions on claims* and has reserved the right to examine medically an individual for whom claim is made....

> Accordingly, *the management and control of the operation and administration of claim procedures* under the Plan, including the review and payment or denial of claims and the provision of full and fair review of claim denial ... shall be vested in [Met Life].

> An individual on whose account claim is made shall ... [when requested] furnish proof of the continuance of total disability....

(J.A. at 150; emphasis added.) The underscored language unequivocally grants Met Life discretionary authority to determine who is eligible for benefits. *Cf. Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983–84 (6th Cir.1991) (authority to determine eligibility found where plan stated that "disability" would be "determined on the basis of medical evidence satisfactory to the insurer"). This language does not, however, give Met Life discretion over decisions concerning the level of benefits payable to Plan benefi-

ciaries, a matter of contract interpretation. *Cf. Tiemeyer v. Community Mut. Ins. Co.,* 8 F.3d 1094, 1099 (6th Cir.1993) (plan granted right to make coverage determinations but did not grant authority to interpret provisions of plan), *cert. denied,* —— U.S. ——, 114 S.Ct. 1371, 128 L.Ed.2d 48 (1994). The district court erred in not examining the scope of the grant of authority, which in this case extends only to issues related to eligibility and not to matters of contract interpretation. Therefore, we will review Met Life's interpretation of Section II of the GE Plan de novo.

■ When applying the de novo standard of review, a court must interpret the terms of the plan "without deferring to either party's interpretation." *See Bruch,* 489 U.S. at 112, 109 S.Ct. at 955 (referring to principles of trust law). Our primary goal is to give effect to the intent of the parties as expressed by the language of the ERISA plan. *Boyer v. Douglas Components Corp.,* 986 F.2d 999, 1005 (6th Cir.1993).

### A. Carve–Out for Retroactive SSDI Payments

■ Section II of the 1982 and 1985 Plans provides in relevant part:

Benefits will be paid monthly and will be one twenty-fourth of your normal straight-time annual earnings reduced by … any primary Social Security benefits. …

According to this language, Plan disbursements may be reduced for "any" social security benefit. There is no basis for distinguishing between retroactive and prospective SSDI payments. *See Calloway v. Pacific Gas & Elec. Co.,* 800 F.Supp. 1444, 1448 (E.D.Tex.1992) ("The retroactive nature of the award does not and should not change the characterization of the benefit under [the] plan."). Nor does Section II limit the offset to the month that the SSDI benefit was received. Thus, when the Lake Plaintiffs received the lump-sum SSDI award, Met Life was entitled to reduce LTD benefits until it recovered the full amount of the payment. We would reach the same result if, for example, SSDI benefits were distributed quarterly or annually, or if the insured breached his duty to inform Met Life of the receipt of SSDI benefits and thereby was paid more than he should have been.

Other courts considering plan language similar to that in the 1982 Plan have upheld the recoupment of retroactive SSDI awards. *See, e.g., Calloway,* 800 F.Supp. at 1447–48; *Spray v. UNUM Life Ins. Co.,* 749 F.Supp. 800, 806 (W.D.Mich.1989); and *Lessard v. Metropolitan Life Ins. Co.,* 568 A.2d 491, 496–98 (Me.1989). Indeed, two courts have interpreted identical contract language to permit recoupment. *Stuart v. Metropolitan Life Ins. Co.,* 664 F.Supp. 619, 622–24 (D.Me. 1987), *aff'd per curiam,* 849 F.2d 1534 (1st Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 496, 102 L.Ed.2d 533 (1988); and *Henning v. Metropolitan Life Ins. Co.,* 546 F.Supp. 442, 448–49 (D.C.Pa.1982) (applying New York state law). The court in *Stuart* stated:

The fact that the word "retroactive" is not used in the Plan or SPD language does not eliminate the fact that the clear language of those documents anticipates reductions in Plan benefits upon the receipt of Social Security benefits. A disabled insured would be required to accept such a reduction upon the immediate payment of Social Security benefits; it would be illogical to construe the contract language to mean that, because Social Security payments were delayed and then paid in a lump sum, the insured would be entitled to full Plan benefits and the Social Security payment.

*Stuart,* 664 F.Supp. at 623–24. The two above-cited cases were each decided under an arbitrary and capricious standard and are therefore of limited precedential value. *See Wulf,* 26 F.3d at 1376. Despite the more deferential standard of review, both courts found recoupment to be permitted by the clear and unambiguous language of the GE Plan. *Stuart,* 664 F.Supp. at 624 ("the Court finds Metropolitan's interpretation of the contract language to be correct as a matter of law"); *Henning,* 546 F.Supp. at 449.

The Lake Plaintiffs argue that this court's decision in *Bush v. Metropolitan Life Ins. Co.,* 656 F.2d 231 (6th Cir.1981), is controlling. In *Bush,* the court held that the terms of an ERISA-governed plan providing insurance coverage did not permit the defendant

to recoup a retroactive lump-sum SSDI award. At issue was the following language:

The Monthly Benefit is the applicable amount ... reduced by an amount equal to the monthly equivalent of the total of the following benefits for which the Employee is eligible:

Disability ... Benefits (Primary Insurance Amount only) to which the employee is entitled under the Federal Social Security Act....

If it is determined that any benefits paid to an Employee under the Group Policy should not have been paid or should have been paid in a lesser amount, the Insurance Company shall be entitled to a refund of the amount of the overpayment.

*Id.* at 232. The linchpin of the court's decision was the existence of ambiguity in the recoupment provision. The court noted that the phrase "should not have been paid or should have been paid in a lesser amount" was subject to two equally plausible interpretations: (a) an overpayment is determined by all facts whenever occurring, or (b) an overpayment is determined solely by facts in existence at the time of the payment. The *Bush* court then applied the Michigan state law doctrine of contra proferentum against the defendant to prohibit recoupment in cases involving a retroactive award of SSDI benefits. *Id.* at 233.

Although *Bush* lends some support to the Lake Plaintiffs' case, it is not controlling and does not alter our interpretation of the Plan. The contract terms at issue in *Bush* are not present in either the 1982 or 1985 Plans. Despite a superficial similarity to *Bush,* the 1985 Plan quite clearly avoids ambiguity by referring to benefits which are "payable retroactively" and not to payments which "should not have been paid or should have been paid in a lesser amount." The Lake Plaintiffs correctly note that 1982 Plan does not contain an express recoupment provision. Contrary to their argument, however, the right to recoup overpayments is part in parcel of Met Life's authority to reduce LTD benefits.

■ The Lake Plaintiffs also argue that the 1982 and 1985 SPDs failed to provide adequate notice of the carve-out for retroactive lump-sum SSDI awards in violation of 29 U.S.C.A § 1022(a)(1). Section 1022(a)(1) provides that plan summaries "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants ... of their rights...." We hold that the 1982 and 1985 SPDs put Plan participants on notice by stating that "[y]our monthly LTD benefit depends upon ... income you're entitled to from ... Primary Social Security." Moreover, the Lake Plaintiffs would not be entitled to recover substantive damages even if we found that the SPDs violated § 1022(a)(1) because violations of the procedural sections of ERISA do not give rise to claims for substantive damages. *See Lewandowski v. Occidental Chem. Corp.,* 986 F.2d 1006, 1010 (6th Cir.1993) (per curiam) (failure to provide a plan beneficiary with documents as required by §§ 1021–22, 1024–25 does not give rise to substantive remedy).

**B. Early-Retirement Benefits**

The Pauley Plaintiffs contend that the carve-out for "any primary Social Security benefits" in the pre–1988 Plans is ambiguous when read in context, and that the pre–1988 SPDs clarify this ambiguity in favor of limiting the offset to SSDI benefits. Met Life contends that Section II unambiguously permits Met Life to reduce LTD benefits by all social security benefits. The district court concluded that the language of the pre–1988 Plans was ambiguous, but deferred to Met Life's interpretation as neither arbitrary nor capricious. As indicated above, our review is de novo. *Wulf,* 26 F.3d at 1373–74.

■ We hold that Section II of the pre–1988 Plans, which provides for the carve-out of "any primary Social Security benefits," unambiguously encompasses social security retirement benefits. Although the word "primary" may be somewhat confusing, there is no definition of "primary" as used in its ordinary, nontechnical sense which would lead one to conclude that the carve-out is limited to SSDI benefits. Further, the context does not alter the plain meaning of the phrase in question. Section II mentions

"workers compensation" and "disability pension benefits," but it also mentions "any primary Social Security benefits" and "any benefits available in conformity with" federal or state law. Finding no ambiguity in the pre–1988 Plans, there is no need, as the Pauley Plaintiffs urge, to refer to the corresponding SPDs for clarification.

▮ Language in a plan summary may, under certain circumstances, control inconsistent terms in the plan. *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir.1988); *Aiken v. Policy Management Sys. Corp.*, 13 F.3d 138, 140 (4th Cir.1993) (per curiam). In *Edwards*, this court enforced the terms of the plan summary where such terms directly contradicted those in the plan and where the plaintiff had received only the summary. The court remarked that "[i]t is of no effect to publish and distribute a plan summary booklet designed to simplify and explain the plan ... and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee for reasonably relying on the summary booklet." *Edwards*, 851 F.2d at 136 (quoting *McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir.1985)).

Here, the pre–1988 SPDs do not alter our interpretation of the corresponding Plans. The pre–1988 SPDs contain a greater emphasis on disability income, stating that "You receive 50% of your monthly pay from the LTD Insurance Plan in combination with other *disability income* ...." (Emphasis added.) Nonetheless, the pre–1988 SPDs also state that LTD benefits are subject to "Primary Social Security" which encompasses social security retirement benefits. Further, any ambiguity caused by the greater emphasis on disability benefits in the pre–1988 SPDs is resolved by reference to the clear and unambiguous language in the pre–1988 Plans. The Pauley Plaintiffs cite to no authority, and we have found none, where a plan summary which is merely ambiguous trumps unambiguous plan language. Moreover, unlike in *Edwards*, each of the Pauley Plaintiffs received the SPD and Plan Document as a single package, and therefore had access to the relevant Plan language.

▮ We are not unsympathetic to the plight of the Pauley Plaintiffs. As a practical matter, the carve-out for social security retirement benefits payable at age sixty-two forced the Pauley Plaintiffs to apply for these benefits. The Pauley Plaintiffs now receive lower monthly social security benefits than they would otherwise be entitled to if they had waited until age sixty-five to receive such benefits. This reduction is permanent and continues despite the fact that they no longer receive LTD benefits. Nonetheless, courts must give effect to the unambiguous terms of an ERISA plan. *Boyer*, 986 F.2d at 1005. Put simply, the pre–1988 Plans do not limit the carve-out to SSDI benefits, but rather state that benefits will be reduced for "any" social security benefits.

## CONCLUSION

Federal law gives effect to straightforward language in ERISA-governed plans. *Turner v. Safeco Life Ins. Co.*, 17 F.3d 141, 145 (6th Cir.1994); *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.1990) ("We will 'not artificially create ambiguity were none exits. If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy.'") (citation omitted). Reviewing the 1982 and 1985 Plan Documents de novo, we conclude that Section II permits Met Life to recover the value of a retroactive lump-sum SSDI award to a Plan beneficiary by reducing that person's future LTD benefits. Additionally, Section II of the Plans in effect prior to the 1988 amendment permits Met Life to carve-out LTD benefits to account for social security retirements payable at age sixty-two. Accordingly, we AFFIRM the grant of summary judgment with respect to both the Lake and the Pauley Plaintiffs.