Christine MORRISON, Plaintiff,

v.

MARSH & MCLENNAN COMPANIES, INC., J & H Marsh & McLennan, Inc., Marsh & McLennan Companies, Inc. Employee Welfare Plan, Metropolitan Life Insurance Company, Defendants.

No. 03–71683.

United States District Court, E.D. Michigan, Southern Division.

July 20, 2004.

Eva T. Cantarella, Bloomfield Hills, MI, for Plaintiff.

David M. Davis, Birmingham, Saul A. Green, Detroit, MI, for Defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

## I. INTRODUCTION

Plaintiff, Christine Morrison, filed a Complaint for life insurance benefits in the amount of $1,000,000, plus statutory penalties, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against Defendants Marsh & McLennan Companies, Inc. ("M & M"), the Plan Administrator, J & H Marsh & McLennan, Inc. ("J & H), a subsidiary of M & M, Marsh & McLennan Companies, Inc. Employee Welfare Plan ("M & M Plan"), and Metropolitan Life Insurance Company, Inc. ("MetLife"), the insurer of the Plan.

Defendants bring the instant Motion to Dismiss Plaintiff's Complaint, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff opposes Defendants' Motion to Dismiss and brings a Cross–Motion for Summary Judgment.

For the reasons that follow, Defendants' Motion to Dismiss is GRANTED, and Plaintiff's Cross–Motion for Summary Judgment is DENIED.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Decedent's Application for Portable Life Insurance

Bruce Morrison, Plaintiff's deceased husband ("Morrison"), was employed by M & M and/or one of its subsidiaries from approximately August of 1970 until January 5, 1999. (Pl.Comp.¶ 14, 17.) In 1998, he worked for J & H, a subsidiary of M & M. (Pl.Comp.¶ 15.) While an employee of J & H, he had coverage for $1,050,000 of Optional Life Insurance, as reflected by his 1999 Health and Welfare Benefits Confirmation Statement, issued on November 22, 1998. (Pl. Comp. ¶ 16; Ex. 3.) Under his Optional Life Insurance plan, $115.50 was deducted from his paycheck each week as a contribution toward the cost of coverage. (Pl. Comp. ¶ 16; Ex. 3.)

On January 5, 1999, Morrison resigned from J & H. (Pl.Comp.¶ 17.) In a letter dated the following day, on January 6, 1999, Gina Kowalski, J & H's Human Resources Manager, advised him that his coverage ended on January 5, 1999. She further explained:

"You may convert your Optional Life Insurance to (1) an individual policy within 31 days of your termination date without submitting evidence of your insurability, or (2) on a group basis, provided you continue to make the required contributions directly to the plan insurer. For more information regarding conversion of your Optional Life Insurance plan...contact MetLife at (800) 523–2894. The forms for conversion are available from your human resources representative."

(Pl. Comp. ¶ 19; Ex. 4, Letter of Jan. 6, 1999.) On January 18, 1999, Morrison completed his part of an application for "Election of Portability Coverage." (Pl. Comp.Ex. 5.) He designated his wife, Plaintiff Morrison, as the beneficiary, and requested $1,000,000 in portability coverage. (Pl.Comp.Ex. 5.)

On February 10, 1999, MetLife notified Morrison that his application for portable life insurance had been denied. (Pl.Comp. Ex. 6.) MetLife denied Morrison's application because MetLife had "not received approval" from Michigan's insurance department. (Pl.Comp.Ex. 6.) MetLife issued a premium refund check to Morrison in the amount of $707.65. (Pl.Comp.Ex. 6.). According to Defendant MetLife, it received "[n]o further communication from .Morrison" subsequent to the denial of Morrison's application for portable life insurance. (Pl. Comp. Ex. 14, MetLife Letter of Mar. 18, 2003.) Plaintiff does not dispute that Morrison failed to contest the denial of his application for portable life insurance.

## B. Relevant Provisions of Plan Documents

Two plan documents referred to in the record of this case, the Plan Certificate and the Benefits Overview Handbook (the "Handbook"), set out the relevant benefits and obligations of employees, participants, and beneficiaries under the M & M Plan.

The Plan Certificate for M & M's Optional Life Benefits Plan, entitled "Your Employee Benefit Plan," specifically states that it relates to "Group Life Benefits issued to each Employee, who, at the time such employee makes a request to continue Life Benefits, *resides in a state which has approved such continuation...*" (Pl. Comp.Ex. 15, v) (emphasis added). The Plan Certificate provides that the continuation of Life Benefits is subject to several

conditions—one condition being that an employee "must make a written request to us to continue such Life Benefits," and that the "request and the first payment for the cost of your continued Life Benefits must be received by us during the Enrollment Period." (Pl.Comp.Ex. 15, v-vi.) The "Enrollment Period is the 31 day period after the date your Life Benefits end." (Pl.Comp.Ex. 15, v-vi.)

The Handbook, issued by M & M in April of 1998 during Morrison's term of employment, explains that "[m]ost of the plan descriptions in this Handbook... constitute 'summary plan descriptions' as required by the Employee Retirement Income Security Act of 1974 (ERISA)." (Pl. Comp.¶ 39, Ex. 1, Handbook, 2.) The Handbook further explains that "[s]ummary plan descriptions are intended to provide [employees] with easy-to-understand general explanations of the more significant provisions of [their] benefit plans." (Handbook, 2.)

According to the Handbook, during their term of employment eligible employees "are automatically covered by a Basic Life Insurance benefit" in the amount of one times their salary, with the cost of coverage paid by M & M. (Handbook, E–1.) In addition, eligible employees "may buy additional portable, group term life insurance coverage of one to six times the amount of [their] annual base salary." (Handbook, E–1.) The Handbook explains that both "Basic Life Insurance" and "Optional Life Insurance" are "term insurance plans" that provide coverage for the period of an employee's "active Company employment." (Handbook, E–2).

An employee seeking to maintain a life insurance policy after the end of his or her employment may do so in one of two possible ways, as set out in the Handbook:

"Within 31 days after employment ends, you may: [1] Convert your Basic Life,

Optional Life, Spouse Life and Dependent Children Life coverage to an individual policy without providing evidence of insurability. [2] Continue all or a portion of your Optional Life coverage by paying contributions for coverage directly to the insurer under the Plan's portability provision." (Handbook, E–2.) "Portability" is defined as a feature of the Optional Life Insurance Plan that allows an employee "to take a life insurance policy with you even if you leave the Company and begin to work elsewhere, provided you continue to make the required contributions." (Handbook, E–2.)

The Plan Certificate states that "if you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court." (Pl. Comp.Ex. 15, 35.) The Plan Certificate does not specify the time during which a suit must be filed. The Handbook explains that "[i]f you feel you have cause for legal action, petition may be presented to the Company's General Counsel for service of legal process at the Company address," and that "[s]ervice of legal process may be made upon the Plan Administrator or a Plan Trustee as well." (Handbook, K–8.). The Handbook explicitly states that legal causes of action "must be brought within three years of the date your benefit was denied (or date your cause of action first arose, if earlier)." (Handbook, K–8.)

## C. Procedural History

On January 28, 2001, nearly two years after MetLife denied Morrison's application for portable life insurance, he died. On August 29, 2002, his wife, Plaintiff Morrison, sent a claim letter to M & M and J & H requesting that they (a) pay her $1,000,000 in life insurance benefits, and (b) provide her with certain Plan documents. (Pl.Comp.¶ 38, Ex. 8.) On November 18, 2002, M & M notified Plaintiff by letter that they had forwarded Plaintiff's claim for benefits to MetLife. (Pl.Comp. ¶ 42, Ex. 10.) On December 12, 2002, MetLife denied Plaintiff's claim for benefits because MetLife was "unable to find any coverage whatsoever on Bruce Morrison's life as a consequence of his Marsh & McLennan employment." (Pl.Comp.¶ 43, Ex. 11.)

On January 10, 2003, Plaintiff Morrison appealed MetLife's denial of her claim for benefits. She also renewed her request for documents and specifically requested a copy of the Handbook and other information allegedly relevant to her claim pursuant to 29 C.F.R. § 2560.503–1(H)(2)(iii).[1] (Pl.Comp.¶ 45, Ex. 12.) On March, 19, 2003, MetLife again denied Plaintiff Morrison's claim for benefits, explaining that "[a]s there was no Portable Term Coverage in effect for Mr. Morrison when he died, there are no proceeds payable." (Pl. Comp.Ex. 14.) MetLife included several of the documents Plaintiff had requested, but did not produce a complete copy of the Handbook or a copy of Policy Form G.24315. (Pl.Comp.¶ 48, 50.)

On April 30, 2003, 4 years and 2 months after Morrison's application for portable life insurance was denied, Plaintiff filed a two-count Complaint against Defendants pursuant to ERISA, 29 U.S.C. § 1001 *et seq.* Plaintiff alleges that she is entitled to $1,00,000.00 in portable life insurance benefits for coverage that her deceased husband was denied shortly after he resigned from J & H. (Pl.Comp.¶ 63.) Specifically,

1. 29 C.F.R. 2560.503–1(h)(2)(iii) provides "a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other in- formation relevant to the claimant's claim for benefits." The term "claimants" refer to "participants" and "beneficiaries." 29 C.F.R. 2560.503–1(a).

Plaintiff requests $1,000,000.00 in life insurance benefits "less the aggregate amount of the premium payments Morrison would have paid ... *if MetLife had accepted his original premium payment tender and not wrongfully denied his Application.*" (Pl.Comp.¶ 63) (emphasis in original). Plaintiff also alleges Defendants owe her statutory penalties in the amount of $110 per day for each day they allegedly failed to provide her with requested Plan documents. (Pl.Comp.¶ 77.)

On July 11, 2003, Defendants M & M, J & H, and the M & M Plan filed the instant Motion to Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6). Defendants argue: (1) Plaintiff is not entitled to any benefits under the Plan; (2) Plaintiff is not a beneficiary or participant under ERISA, and therefore has no standing to bring this lawsuit; and (3) Plaintiff's claims are barred by the Plan's three-year statute of limitations. On September 12, 2003, Defendant MetLife filed a Motion to Dismiss adopting the arguments presented by M & M, J & H, and the M & M Plan.

On, October 3, 2003, Plaintiff filed a Response opposing Defendants' Motion to Dismiss and a Cross–Motion for Summary Judgment, in which she argues that her claim for benefits is not time-barred for two reasons. First, she contends that the Handbook's statute of limitations provision is "unenforceable" because a similar provision is not contained in the Plan Certificate. (Pl. Reply Br. 3.) Second, she argues that, even if the Handbook's statute of limitations period applies, Plaintiff's cause of action did not accrue until December 12, 2002, the date MetLife denied Plaintiff's claim for benefits, and not on February 10, 1999, the date MetLife denied Morrison's application for portable life insurance. (Pl. Mt. Summary Judgment, 20.)

She also argues, on the issue of Morrison's eligibility for portable life insurance,

that neither the Handbook nor *BeneNews,* unlike the Plan Certificate, conditions eligibility for portability coverage on approval of MetLife's portable product by the State of Michigan. On this issue, Plaintiff argues that the provisions of the Handbook should supercede the explicit language in the Plan Certificate referring to state approval of MetLife's insurance product. (Pl. Mt. Summary Judgment, 11.) She also argues that Morrison fulfilled the eligibility requirements contained in the Handbook, and contends that Morrison qualifies as a "participant" of the Plan, and that Plaintiff qualifies as a "beneficiary" of the Plan. (Pl. Mt. Summary Judgment, 16.)

## III. ANALYSIS

### A. Standards of a Motion to Dismiss and Summary Judgment

A party is entitled to a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted. A motion to dismiss may be granted under Fed.R.Civ.P. 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In reviewing the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 512 (6th Cir.2001).

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the evidence and any inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). However, the "mere existence of a scintilla of evidence" in support of the nonmovant's position is insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. 242 at 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden on the moving party is satisfied where there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Plaintiff's Claim for Life Insurance Benefits

I begin with two observations. First, I note that the Plan Administrator, M & M, did not rule on the question whether Plaintiff was entitled to life insurance benefits, but instead sent Plaintiff's inquiry to MetLife, who denied her claim. Because I conclude that the Plan Administrator made no decision on the question, I proceed to address the merits of the claim.

Second, in light of the fact that the parties agree that Morrison's application for portable life insurance was denied on February 10, 1999, and that no premium payments were ever paid towards any policy after MetLife returned Morrison's initial premium payment, I conclude that there is no valid life insurance policy under which Plaintiff has a claim for benefits.

Even if Defendants "wrongfully denied" Morrison's application on February 10, 1999, as Plaintiff suggests in her Complaint, (Pl.Comp.¶ 63), as I explain below, any claim for benefits Plaintiff might have had is time-barred. Because I resolve this matter based on the statute of limitations, I do not address the other arguments made by the parties in their papers.

### 1. The Handbook's Three–Year Statute of Limitations Provision is Enforceable

ERISA requires that every plan "shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). In addition to this main plan document, ERISA mandates that the administrator of a plan shall create a written summary plan description ("SPD") and "shall furnish to each participant, and each beneficiary receiving under the plan, a copy of the summary plan description." 29 U.S.C. § 1024(b). An SPD must be "sufficiently accurate and comprehensive to reasonably apprise [ . . . ] participants and beneficiaries of their rights and obligations under the plan," and it must contain information regarding "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(a) and (b). SPDs "must not have the effect of misleading, misinforming, or failing to inform participants and beneficiaries." 29 C.F.R. § 2520.102–2(b).

Both main plan documents and SPDs govern the rights and obligations of employees and employers under ERISA plans. *See Sprague v. General Motors Corp.,* 133 F.3d 388, 402 (6th Cir.1998) (recognizing that Congress intended that "plan documents and SPDs" should govern obligations under ERISA plans). In construing the terms of a plan, "courts must give effect to the unambiguous terms of an ERISA plan." *Lake v. Metropolitan Life*

*Insurance Co.*, 73 F.3d 1372, 1379 (6th Cir.1996) (citing *Boyer v. Douglas Components Corp.*, 986 F.2d 999, 1005 (6th Cir. 1993)). Courts must interpret provisions based on general principles of contract law "according to their plain meaning in an ordinary and popular sense." *Williams v. International Paper Co.*, 227 F.3d 706, 711 (6th Cir.2000). The Sixth Circuit has emphasized that courts will "not artificially create ambiguity where none exists." *Lake*, 73 F.3d at 1379 (*citing Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.1990) (citation omitted)).

Where no conflict exists between the terms of plan documents, courts tend to read the provisions together as part of an integrated whole to determine rights and obligations under ERISA plans *See e.g. Wendy's International, Inc. v. Karsko*, 94 F.3d 1010, 1013 (6th Cir.1996) (interpreting both the SPD and the Plan document together to determine the scope of the plan's subrogation provisions, where the documents contained no "conflicting language"); *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933 (6th Cir.1996) (noting that the SPD "should have been" "treated as an integral part of the Plan"); *Musto v. American General Corp.*, 861 F.2d 897 (6th Cir.1988) (interpreting provisions in both the plan itself and the SPDs to determine the plaintiffs' rights under group insurance policies). *See also Chiles v. Ceridian Corp.*, 95 F.3d 1505 (10th Cir.1996) (stating that "[i]n interpreting the terms of an ERISA plan we examine the plan documents as a whole and, if unambiguous, we construe them as a matter of law.").

Where a conflict exists such that the terms in an SPD directly contradict terms in a main plan document, the Sixth Circuit has held that "the summary shall govern." *Edwards v. State Farm Mutual Automobile Insurance Co.*, 851 F.2d 134, 136 (6th Cir.1988). *See also Sprague*, 133 F.3d 388 (6th Cir.1998). The underlying rationale of this rule rests upon a concern that the information contained in an SPD should be accurate and not misleading so that employees may reasonably rely on the information provided to them under ERISA. The Sixth Circuit has explained that "it is the employer's duty to put employees on notice of their rights under the Plan, and if they fail to adequately do so, they will be precluded from enforcing Plan language which conflicts with summary description language to the detriment of employees." *Helwig v. Kelsey–Hayes Co.*, 93 F.3d 243, 247 (6th Cir.1996). This rule applies only where there is a conflict or ambiguity between terms in an SPD and terms in a main plan document.

■ In this case, Plaintiff contends that the three-year statute of limitations provision contained in the Handbook (the SPD) is "unenforceable" because it allegedly "misinforms participants as to the terms of the Plan," and because the Plan Certificate is allegedly "more favorable" to employees than the Handbook. (Pl. Br. in Support of Mt. Summary Judgment, 21.) Plaintiff bases her arguments on an alleged conflict between the Handbook, which provides that legal "[a]ctions must be brought within three years," and the Plan Certificate, which provides that an employee "may file suit in state or Federal court," but does not include a time limit for filing suit. (Handbook, K–8; Pl. Comp. Ex. 15, Plan Certificate, 35.) In support of her argument, Plaintiff relies on a line of cases that have held that where provisions in an SPD *conflict* with provisions in another plan document, the provision more favorable to the employee controls. (Pl. Br. Opposing Def.s' Mt. to Dismiss.) *See e.g. Bergt v. Retirement Plan For Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139 (9th Cir. 2002); *Sturges v. Hy–Vee Employee Ben. Plan and Trust*, 991 F.2d 479 (8th Cir.

1993); *Glocker v. Grace & Co.*, 974 F.2d 540 (4th Cir.1992); *McGee v. Equicor–Equitable HCA Corp.*, 953 F.2d 1192 (10th Cir.1992).

However, in the present case, no conflict exists between the relevant provisions of the Handbook and the Plan Certificate. The Plan Certificate states that "if you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court." (Pl. Comp.Ex. 15, 35.) The Handbook explains that in the event a legal cause of action is brought to recover benefits, as provided for in the Plan Certificate, it "must be brought within three years." (Handbook, k–8.) Neither provision is ambiguous, misleading, nor in conflict with the other, and both are easily reconcilable. Read together the complimentary provisions unequivocally provide for a right to bring a legal action in state or Federal Court to recover benefits within three years after a legal cause of action accrues. Because no conflict exists between the relevant provisions, the cases relied upon by Plaintiff are inapposite.[2] Furthermore, because no conflict exists, it appears clear that the provisions in both the Handbook and the Plan Certificate are enforceable.

Therefore, this Court holds that the three-year statute of limitations provision contained in the Handbook is enforceable.

### 2. Accrual Date of Cause of Action

ERISA does not provide a statute of limitations for benefit claims. The Sixth Circuit "has noted that such claims are governed by the most analogous state statute of limitations, which is that for breach of contract." *Santino v. Provident Life and Accident Insurance Co.*, 276 F.3d 772, 776 (6th Cir.2001). The Michigan general breach of contract statute of limitations is six years. M.C.L. § 600.5807(8). However, the Sixth Circuit has also recognized that "insurance contracts may contain shorter statutes of limitations," and has upheld a three-year statute of limitations for an ERISA cause of action. *Santino*, 276 F.3d at 776. In this case, the statute of limitations provision contained in the Handbook provides that legal "[a]ctions must be brought within three years of the date your benefit was denied (or date your cause of action first arose, if earlier)." (Handbook, K–8.)

As a general rule, a "cause of action for benefits under ERISA does not arise until a claim for benefits has been made and formally denied." *See e.g. Stevens v. Employer–Teamsters Joint Council No. 84 Pension Fund*, 979 F.2d 444, 451 (6th Cir.1992). However, courts in the Sixth Circuit have held that a cause of action may accrue, even before a claim for benefits is made and formally denied, when there has been a "repudiation by the fiduciary which is clear and made known to the beneficiary." *Jackson v. UNUM Life Insurance Co. of America*, 2003 WL 1142549, *2 (W.D.Mich.2003). In a recent case illustrating this point, the Sixth Circuit found that the plaintiff's cause of ac-

**2.** In Plaintiff's Notice of Recent Supplemental Authority, Plaintiff also seeks to rely on a case from the Eleventh Circuit, *Shaw v. Connecticut General Life Insurance Co.*, 353 F.3d 1276 (11th Cir.2003), in which the court held a modification contained in the SPD to be invalid where no such provision was contained in the Plan itself. *Shaw* is distinguishable from the present case because in *Shaw* the underlying contract explicitly stated that "[n]o change in this contract will be valid unless approved" by a specific procedure, and the court held that there was "no evidence that the underlying policy was properly amended according to its own provisions." In the present case, however, the question of valid amendments to a Plan is not before this Court, and therefore *Shaw* is not persuasive authority.

tion accrued at the time of the plaintiff's failure to provide proof of loss, as required by the terms of the plan, prior to the date her application for benefits was formally denied. *Clark v. NBD Bank, N.A.*, 3 Fed. Appx. 500, 2001 WL 180971 (6th Cir.2001) (unpublished).

I note that there is also persuasive precedent in other Circuits establishing that an ERISA claim may accrue upon a "clear repudiation" of an individual's entitlement to benefits, even in the absence of a formal application for benefits and a formal denial of such a claim. *See e.g. Wilkins v. Hartford Life and Accident Insurance Co.*, 299 F.3d 945, 949 (8th Cir.2002) ("the cause of action accrues...when the plan administrator formally denies the claim for benefits, unless there was a 'repudiation by the fiduciary which is clear and made known to the beneficiary.'") (citations omitted); *Carey v. International Brotherhood of Electrical Workers Local 363 Pension Plan*, 201 F.3d 44, 49 (2nd Cir.1999) ("an ERISA claim accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits."); *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 65–66 (7th Cir.1996) (rejecting the plaintiff's assertion that his cause of action did not accrue until he actually filed a formal application for benefits where pension fund "unequivocally informed" him that he was not entitled to a pension).

In this case, Plaintiff argues that her cause of action did not accrue until December 12, 2002, when MetLife formally denied her claim for life insurance benefits. (Pl. Br. in Support of Mt. for Summary Judgment, 20.) However, almost two years prior to the date of MetLife's formal denial of Plaintiff's claim for benefits, MetLife clearly and unequivocally repudiated Morrison's entitlement to

Optional Life Insurance when it denied Morrison's application. On February 10, 1999, MetLife notified Morrison by letter that it had "not received approval" for its portable life insurance product from the State of Michigan, and that therefore, it "must regrettably deny [Morrison's] application." (Pl.Comp.Ex. 6.) MetLife enclosed Morrison's premium refund check in the amount of $707.65, and directed Morrison to contact MetLife's Customer Service Unit if he had any questions. (Pl.Comp.Ex. 6.)

Plaintiff admits MetLife denied her deceased husband's application for portable life insurance on February 10, 1999. (Pl. Comp.¶ 31.) Plaintiff does not contradict MetLife's assertion that subsequent to MetLife's denial of coverage to her deceased husband, "[n]o further communication was received from Morrison." (Pl. Comp.Ex. 14.) Plaintiff also states that Morrison never sent MetLife any further premium checks in her Complaint, where she requests an award of $1,000,000.00 *"less* the aggregate amount of the premium payments Morrison *would have paid* between the date of his separation from J & H (January 5, 1999) and his death (January 28, 2001) if MetLife had accepted his original premium payment tender and not wrongfully denied his Application." (Pl. Comp.¶ 63) (emphasis added). In light of the above undisputed facts, there is no question that MetLife's repudiation of Morrison's entitlement to portable life insurance was "clear" and unequivocal.

Thus, a cause of action challenging the denial of Morrison's application for portable life insurance (a challenge implicit in Plaintiff's claim for benefits) accrued on February 10, 1999, the date MetLife denied Morrison's application for benefits, and not on December 12, 2002, the date MetLife denied Plaintiff's claim for benefits. This conclusion is in accord with the

plain language of the Handbook which makes it clear that causes of action may accrue prior to a formal denial of a claim for benefits by stating that legal causes of action "must be brought within three years of the date your benefit was denied (*or date your cause of action first arose, if earlier*)." (Handbook K–8) (emphasis added.)

Pursuant to the Handbook's three-year statute of limitations, a cause of action should have been filed in this case no later than February 10, 2002. Therefore, because Plaintiff failed to file this cause of action until April 30, 2003, this Court holds that Plaintiff's cause of action is time-barred.

### C. Plaintiff is Not Entitled to Statutory Penalties

29 U.S.C. § 1132(c) provides that any administrator "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal..." 29 U.S.C. § 1132(c)(1)(B). The Code of Federal Regulations specifies that "a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503–1(h). The term "claimant" refers to "participants and beneficiaries." 29 C.F.R. § 2560.503–1(a).

As expressly stated in the above text, the statutory duty to disclose requested documents applies only to document requests by "participants" or "beneficiaries." A "beneficiary" means "a person designated by a participant, or by the terms of an employee benefit plan, who is or may be-

come entitled to a benefit thereunder." 29 U.S.C. 1002(8). A "participant" is defined as "any employee or former employee of an employer, ...who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7).

■ In the present case, Plaintiff contends that she "is a Plan beneficiary" and seeks statutory penalties for Defendants' alleged failure to provide her with requested documents pursuant to 29 U.S.C. § 1132(c)(1). (Pl. Br. Opposing Def.s' Mt. to Dismiss, 19.) Her claim necessarily assumes that her deceased husband qualifies as a "participant" under the M & M Plan, because otherwise there would be no relevant plan from which her alleged status as a "Plan beneficiary" could derive. However, Plaintiff's decedent never became a "participant" under the M & M Plan because his application for portable life insurance was unequivocally denied by MetLife on February 10,1999. In addition, as explained above, the time to. challenge the denial of Morrison's application for portable life insurance expired prior to the date Plaintiff filed her Complaint to recover benefits.

Thus, because Morrison's application for portable life insurance was denied, no policy existed after February 10, 1999 under which Plaintiff could claim a benefit. Therefore, because Plaintiff does not qualify, and has not qualified since February 10, 1999, as a "beneficiary" of any existing life insurance plan, Plaintiff is not owed statutory penalties for Defendants' alleged failure to provide her with certain requested documents relating to the M & M Plan.

### IV. CONCLUSION

For the above reasons, Defendants' Motion to Dismiss Plaintiff's two-count Complaint is GRANTED, and Plaintiff's Cross-

Motion for Summary Judgment is DE-NIED.

**IT IS SO ORDERED.**